148 N.J. Super. 437 (1977)
372 A.2d 1133
WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF ALLENHURST, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH; THE ALLENHURST BEACH CLUB; MARTIN J. VACCARO, MAYOR OF THE BOROUGH OF ALLENHURST; WILLIAM T. GLYNN, A COMMISSIONER OF THE BOROUGH OF ALLENHURST; DR. JAMES A. O'MALLEY, A COMMISSIONER OF THE BOROUGH OF ALLENHURST, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1977.
Decided March 29, 1977.
*439 Before Judges BISCHOFF, MORGAN and FURMAN.
Mr. Alfred C. Clapp, of Messrs. Clapp & Eisenberg, argued the cause for appellants (Messrs. Stout, O'Hagan & Dowd, attorneys; Messrs. Robert W. O'Hagan and Clark C. Vogel, of counsel).
Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MORGAN, J.A.D.
This is another appeal which concerns the extent of a shorefront community's obligation to open its beaches and municipal facilities adjacent thereto to both residents and nonresidents on equal terms. See also, Van Ness v. Deal, 145 N.J. Super. 368 (App. Div. 1976).
The municipality is the Borough of Allenhurst, a small community (.3 square miles) bordering on the Atlantic Ocean immediately south of Deal, which consists of six streets running north-south and six streets running east-west. It is almost entirely residential in character, with no hotels, motels, rooming or boarding houses and no board-walk concessions or amusements. Its population totals 1112 people, although during the summer months it increases to around 1400. As the trial judge found, "it may be fairly characterized as a quiet, dignified community."
Allenhurst's shore line is a bluff, the sand being 20 feet below street level. Although the beach is 1200 feet long, only 250-300 feet of the ocean may be safely used by bathers on a good day. Most of the usable beach lies to the north of the Beach Club, with the stretch immediately in front of the Club being the least desirable area. What beach there is is limited by jetties, rocks and pilings, and in high tide most of the southern portion of the beach is washed by the ocean waters.
*440 The Allenhurst Beach Club is located on the upland soil adjacent to the sand. Presently, the Club's facilities include 329 lockers and 38 cabanas, a restaurant with a 100-person capacity, several snack bars, sun decks and sun bathing paraphernalia such as chaises and lounges, restrooms, one large and two small swimming pools. As the trial judge noted, parking for the Club is at a premium. Two small parking lots service the Club; one has capacity for ten cars and the other, for four cars. There is no question, and the trial judge noted, that parking facilities are inadequate to handle those persons attending the Club.
Unlike Deal, and probably because of its more modest size and population, the Allenhurst Beach Club does not exclude nonresidents from membership. In 1975 there were 782 resident and 589 nonresident full-season memberships and three residents and one nonresident holding half season membership. Nonresidents are charged more than residents for membership in the Club, and the trial judge's invalidation of this policy provides one of the issues on this appeal. The seasonal fee for a nonshower bathhouse is $75 for residents and $100 for nonresidents; for a shower bathhouse $125 for residents and $140 for nonresidents. A nonresident is defined as a person not actually residing in Allenhurst during the summer season.
Allenhurst took title in 1901 to the property on which the Club is located through deeds, each of which recites that the conveyance is made to the borough "for the establishment of a public park and place of public resort for health and recreation in said Borough." Since 1913 the borough has invested a total of $2,300,000 to build and maintain the Club; the State's expenditure of $420,000 related only to maintenance of the beach itself. Membership fees do not equal costs of maintenance. In 1975 the annual deficit was approximately $30,000, which was met through property taxes paid by Allenhurst residents. In addition, the taxpayers pay for the police and sanitation crews allocable to the Club during its *441 season. In the trial judge's view, the Club cannot be viewed as a lucrative municipal asset.
Although there was no specific trial court finding as to access to the beach itself, neither party seriously disputes the existence of the two entryways to the beach proper, exclusive of the access thereto from the Club. The record provides uncontradicted evidence of this fact. Fees for beach use are the same for residents and nonresidents, and are included as a line item in the total charge for Club membership. Furthermore, neither party disputes the right of the public to have access to public trust lands on the same terms as those made available to residents. Indeed, in Allenhurst the public can use the entire dedicated beach area, including those portions upland of the public trust area, and for the same beach fee as that charged residents. To dispel any possible confusion and despite the agreement of counsel on this point, we expressly hold that the general public is entitled to access to both the public trust lands along the Allenhurst shoreline and to all portions of the dedicated beach area in that municipality for a fee no greater than that charged residents for similar use. To the extent that the trial judge so held, we affirm.
Moreover, since the trial of this case, the trial judge, on plaintiff's application, invalidated an ordinance prohibiting the wearing of beach apparel on the streets of Allenhurst. This ordinance had the effect of precluding a change of clothing in cars or in private residences of nonmembers of the Beach Club, and to a serious extent impeded the free use by the general public of public trust lands. No appeal has been taken from that ruling and the general public is now permitted the convenience of changing into bathing attire elsewhere and walking to the beach, eliminating the necessity to use the locker facilities from the Club as a condition to the enjoyment of beach use. Hence, the practical requirement for Club membership as a condition to enjoyment of public trust lands, a factor which weighed heavily in the trial judge's opinion here under challenge, is no longer in the case.
*442 Primary attention in this appeal is directed to that part of the trial judge's ruling, reflected in his judgment, invalidating the difference in the Club membership fee charged residents and nonresidents, prohibiting any fee for Club use by children under 12 years of age, and requiring that at least some residents and nonresidents be accepted at the Club on a daily, as distinguished from a seasonal or half-seasonal, basis "for a reasonable fee to be established by ordinance, but which in any event shall not be based upon nor tied to the cost of operating the beach club." But see Neptune City v. Avon-by-the-Sea, 61 N.J. 296, 311 (1972). Allenhurst was ordered to submit to the court a plan for Club use wherein provision would be made for daily as well as seasonal and half-seasonal memberships for the use and enjoyment of all Club facilities.
The abrogation of the fee differential for resident and nonresident Club membership was based squarely upon perceived implications of the public trust doctrine as described in Neptune City v. Avon-by-the-Sea, supra. The trial judge conceived that "the Avon decision compels the standardization of resident and non-resident fees." The borough takes issue with this conclusion and so do we. Avon dealt only with the right of the general public to enjoy public trust lands and dedicated beach areas on the same terms as those made available to local residents of the municipality in which such beach area was located; higher charges for nonresident use of such lands was interdicted. No question was raised with respect to the public's access to man-made improvements adjacent to public trust lands or dedicated beach areas, and the opinion itself is devoid of any reference to this issue. Nothing in the Avon opinion compels, or even suggests, the conclusion reached by the trial judge.
Nor are we persuaded, as was the trial judge, that the logic of Avon implied inclusion of man-made improvements, designed for use in conjunction with a dedicated beach, within the scope of the public trust doctrine. The authorities relied upon and quoted at length in that carefully considered *443 opinion all related to tidal waters as belonging to the sovereign "for the common use of all the people." Id. at 303. The prime importance of the public trust doctrine was explained in the following terms:
Remaining tidal water resources still in ownership of the State are becoming very scarce, demands upon them by reason of increased population, industrial development and their popularity for recreational uses and open space are much heavier, and their importance to the public welfare has become much more apparent. [Id. at 307]
Clearly, Avon was concerned solely with the exclusion of the public from a valuable natural resource held by the State for the common and nondiscriminatory use of the public at large; it was this consideration which justified abrogation of a higher fee to nonresidents for use of the commonly held natural resource. See also, Note, "Public Access to Beaches: Common Law Doctrine and Conditional Challenges", 48 N.Y.U.L. Rev. 369, 385 (1973); Sax, "The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention," 68 Mich. L. Rev. 471, 484 (1970). Research has disclosed no case in which the public trust doctrine has been extended to include man-made limited-capacity facilities adjacent to a public beach area designed for use in conjunction therewith; the trial judge cited none and the Attorney General does not take a contrary position.[1]
Van Ness v. Deal, supra, recently decided by this court, did not concern itself with the application of the public trust doctrine to a municipal beach club facility, because the trial *444 judge in that case declined to predicate his ruling thereon. We there held that a municipality could lawfully restrict membership in such a facility to residents, provided that free public access to public trust lands and dedicated upland beach area on a nondiscriminatory basis was insured. We there reasoned that since such a club could only accommodate a small number of the total state population, with most people of necessity having to be excluded, residence provided a rational basis for determining membership since residents had financially contributed to the establishment and maintenance of the club through their tax contributions.
The same considerations underlie our holding in this case, which is that a municipality may lawfully charge nonresidents a higher fee for membership in a municipal beach facility. The trial judge himself noted the logic in the disparate charges because residents were already paying for Club facilities as part of their tax bill. The difference in charge for membership is not discriminatory, but rather represents an attempt to equalize the nonresident and resident financial contributions to the maintenance of club facilities. Were the fees to be equal, residents would in fact be paying more than nonresidents for membership. Avon does not, even by logic or fair implication, hold otherwise.
Finally, we reverse the trial judge's mandate that some provision for daily use of the Club facilities be made. Apparently that ruling was predicated on his conclusion that seasonal and half-seasonal memberships constituted an improper exercise of police power, in that such memberships are "not reasonably calculated to effect [sic] health and safety where no provision is made for daily use other than by guests privileges." We disagree. The requirement for seasonal memberships constitutes an entirely reasonable attempt by the municipality to insure the orderly use and maximum enjoyment of a limited municipal facility. Those who pay for the entire season will make most use of Club facilities; they contribute more to its maintenance. The occasional daily user will oust some of those who would otherwise *445 make more intensive use of this limited facility. Moreover, the inadequate parking available to all users of the Allenhurst Beach Club cannot be ignored. The trial judge himself noted that the parking for the Club was at a premium even with respect to its current mode of use. Two small lots provide parking for only 14 cars. With some 1300 memberships, parking is indeed a problem. The affidavit of the chief of police, admitted into evidence, notes that the critical parking problem during the summer season is alleviated only by the fact that many of the borough residents who belong to the Club walk there. Were these members to be replaced by nonresidents who drive to the Club, "we would be faced with a chaotic situation. Our presently overloaded streets would be unable to handle the influx of automobiles." No contrary evidence was advanced. Use of the Club on a daily basis by many using cars as transport would only exacerbate an already difficult problem. Clearly, the presumptive validity of municipal action has not been overcome in these circumstances.
We have given careful consideration to the suggestion of our dissenting brother. We reject it for the following reasons: First, it is irreconcilable with the basic holding of the case (with which the dissenter does not seem to quarrel) that the public trust doctrine applies only to natural resources subject to it, as distinguished from man-made improvements thereto. The public trust doctrine does not require that a municipality encourage use of public trust lands; its central requirement is that the municipality do nothing which interferes with public access to those areas. Second, potential beach users will not be more discouraged from use of the beach for lack of changing facilities where the municipality has provided such facilities for others in its beach club than they would be if no such beach club were in existence. The result of the dissenter's procedure would be to burden a shorefront community's right to provide for the recreational needs of its residents by an obligation to make similar provision for others, a burden not imposed upon inland *446 communities. The geographical accident of a shorefront municipality's location should not result in burdening its residents with financing costly facilities for the State's general population if they wish to provide for their own. Third, the proposal creates serious practical problems, the solution to which is not apparent. For how many beach users must facilities be provided? Some shore communities having a municipal beach club have, unlike Allenhurst, substantial beach areas, with the beach club serving only one small portion thereof. In such communities peak days would see crowds of people seeking access to public trust lands. Must such a community provide facilities for all? And where must they be located? Are the courts to determine how many facilities are enough? We see nothing in the fair or necessary implications of the public trust doctrine to require a municipality to provide, at its own cost, facilities for the State's population-at-large if it wants to make provision for the recreational needs of its own inhabitants.
In conclusion, and for the reasons given, we affirm that portion of the trial court judgment which requires that public access to public trust lands and dedicated beach area in Allenhurst be insured for the same fees for residents as nonresidents. We reverse that portion of the judgment, however, which invalidates the higher fees charged nonresidents for Club use and which requires some proportion of daily, as distinguished from seasonal or half-seasonal, use.
FURMAN, J.S.C. Temporarily Assigned (dissenting).
In Neptune City v. Avon by the Sea, 61 N.J. 296 (1972). Justice Hall set forth the fundamental law that
* * * at least where the upland sand area is owned by a municipality  a political subdivision and creature of the state  and dedicated to public beach purposes, a modern court must take the view that the public trust doctrine dictates that the beach and the ocean waters must be open to all on equal terms and without preference and that any contrary state or municipal action is impermissible. [at 308-309]
*447 Defendant Borough of Allenhurst owns the upland from the public street to the tide-flowed beach. The grants to it were for public park and recreational purposes. The Beach Club, which it operates on the upland, provides the only changing and toilet facilities in proximity to the public beach, but restricted to use by members and guests. Its fees are discriminatory against nonresidents. Memberships are seasonal and half-seasonal only.
In Van Ness v. Deal, 145 N.J. Super. 368 (App. Div. 1976) Judge Morgan commented (at 371): "Nor does this case concern an alleged interference with the public's access to locker room or other changing or toilet facilities reasonably necessary for enjoyment of public trust lands." The case before us does. Without available changing and toilet facilities at an equal fee, use of the public beach by residents on a daily basis as well as by nonresidents is discouraged and the intent of Avon thwarted.
A municipality owning upland need not provide changing and toilet facilities for users of the public beach. Having provided such facilities the municipality, in my view, must make them or comparable facilities available to residents and nonresidents on a daily basis without discrimination.
Avon does not require that various amenities offered by the Beach Club  cabanas, restaurant, snack bars, sun decks and swimming pools  be open to nonresidents as well as residents without a fee differential. Such facilities, unlike changing and toilet facilities, are not reasonably necessary for enjoyment of public trust lands.
I would affirm in part and reverse in part, remanding to the trial judge for approval of a plan in conformity with this opinion to be submitted by defendant borough within 60 days.
NOTES
[1] The Attorney General, in his brief, takes a position consistent with that adopted in Van Ness v. Deal, supra, stressing the necessity for beach access on a nondiscriminatory basis, a view adopted in Van Ness and again in this opinion. In Van Ness v. Deal, the Attorney General disagreed with the Public Advocate's position that the public trust doctrine insured equal access of the general public to municipal beach club facilities. In this case, the Attorney General, consistently, avoids contending that the public trust doctrine forbids a higher charge for beach club membership to nonresidents or that it mandates daily access to beach club use.