WILLIAM F. HYLAND, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOROUGH OF ALLENHURST, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, *ET AL*, DEFENDANTS-RESPONDENTS.

Argued June 13, 1978—Decided October 16, 1978.

Mr. *Stephen Skillman,* Assistant Attorney General, argued
the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Michael S. Bokar,* Deputy
Attorney General, on the brief; *Mr. Skillman,* of counsel).

Mr. *Alfred C. Clapp* argued the cause for respondents
(*Messrs. Clapp & Eisenberg,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. This appeal, having a background similar
to *Van Ness v. Borough of Deal,* 78 *N. J.* 174, also
decided by us this day, is taken as a matter of right by
virtue of a dissent in the Appellate Division.

The Borough of Allenhurst is a small oceanside community
in Monmouth County, immediately to the south of the
Borough of Deal. It is .3 of a square mile in area and
consists of six streets running in a north-south direction,
and six streets running east-west. Its eastern boundary is
the Atlantic Ocean. The Borough is almost wholly residential
in character. There are no hotels, motels, rooming or boarding
houses in Allenhurst. Its population fluctuates between

approximately 1100 residents in the off-season and 1400 during the summer months.

The Allenhurst beach is 1600 feet in length of which 1200 feet is owned by the Borough and dedicated to public use. Only a 250-300 foot area is suitable for bathing. Use of the beach is limited by jetties, rocks and pilings, and the southern portion of the beach is washed by the ocean at high tide.

The Borough owns and maintains a beach club adjacent to the municipally owned beach. It was built by the Borough in the 1930's and presently consists of bathhouses, cabanas, a restaurant, several snack bars, sundecks, chaises and lounges, rest rooms and one large and two small swimming pools. It also has two small parking lots with a total capacity for 14 cars.

Membership in the club is open to nonresidents of Allenhurst as well as to residents on a seasonal or half-seasonal basis, but nonresidents are charged higher fees than residents for use of beach club facilities. The beach fee is the same for residents and nonresidents. As a practical matter, though, one had to be a member of the club in order to use the beach, as an Allenhurst ordinance forbade the appearance on a public street of a person in bathing attire. This ordinance effectively prevented anyone from changing into a bathing suit except at the beach club. The complaint filed by the Attorney General charged the Borough with illegal and discriminatory practices in the maintenance and operation of its beach and beach club.

The trial judge, in an oral opinion, sustained the Attorney General's complaint. He held that this Court's decision in *Bor. of Neptune v. Bor. of Avon-by-the-Sea,* 61 *N. J.* 296 (1972) required that man-made facilities adjacent to a publicly owned beach and essential to the meaningful enjoyment of the beach area must be made available to all on an equal basis. Accordingly, he ruled that club membership fees had to be the same whether for residents or nonresidents. He also viewed as unreasonably restrictive the limiting of

memberships to seasonal and half-seasonal permits. He ordered that Allenhurst institute a plan to provide for daily membership admission to all club facilities at a cost which was related only to the expenses of operating the beach itself. Final judgment was entered on July 13, 1976 embodying the aforesaid rulings. Notice of appeal was promptly filed by defendants.

When Allenhurst failed to submit a suitable plan for daily membership, the trial judge, by order dated August 2, 1976, and an amending order dated September 13, 1976, devised a plan whereby members of the public, up to 100 in number, were to be admitted to the beach on a daily basis at a cost of $2 on weekdays and $3 on weekends and holidays. Children under 12 years of age were to be admitted without charge. Users of the beach were to be provided with access to a source of drinking water.

The September 13 order additionally invalidated the borough ordinance prohibiting the appearance on a public street of a person in bathing attire. It also stayed those portions of the final judgment pertaining to beach club facilities other than the sand beach pending the outcome of defendants' appeal. Defendants filed a notice of appeal from the September 13 order (except for the stay), but thereafter entered into a stipulation dismissing the appeal from that order.

The Appellate Division in a reported opinion, *Hyland v. Borough of Allenhurst*, 148 *N. J. Super.* 437 (1977), reversed in part. It sustained the trial judge's ruling that the publicly owned dry beach area must be open to all on equal terms. After noting that access to the public beach was available through two entryways, exclusive of the access thereto from the club, the Appellate Division held:

\* \* \* To dispel any possible confusion and despite the agreement of counsel on this point, we expressly hold that the general public is entitled to access to both the public trust lands along the Allenhurst shoreline and to all portions of the dedicated beach area in that mu-

nicipality for a fee no greater than that charged residents for similar use. To the extent that the trial judge so held, we affirm.

*Id.* at 441.

The Appellate Division reversed the trial ruling that membership fees for club facilities had to be the same for residents and nonresidents. It found nothing in our decision in *Avon* which required that the Public Trust Doctrine be made applicable to man-made facilities adjacent to publicly owned beaches. Instead, it sustained the different charges for club membership as not discriminatory but, rather, a legally justifiable attempt to equalize the nonresident and resident financial contributions to the maintenance of club facilities.[1]

The Appellate Division also reversed the trial judge's mandate that some provision be made for daily use of club facilities in addition to the seasonal and half-seasonal memberships. It found the limitation on use of club facilities to seasonal memberships to constitute an entirely reasonable attempt by the municipality to insure the orderly use and maximum enjoyment of a limited municipal facility. It reiterated its conclusion that the Public Trust Doctrine applied only to natural resources subject to it and not to man-made facilities.

One Appellate Division judge dissented on the latter point. While conceding that a municipality need not provide changing and toilet facilities for users of the public beach, since such facilities had been established by the municipality, he concluded that they or comparable facilities must be made available to residents and nonresidents on a daily basis without discrimination. By virtue of the dissent, the Attorney General has appealed as of right. *R.* 2:2–1(a)(2).

---

[1] The record shows that the beach club revenues are insufficient to pay operating expenses. The deficit is made up by the municipality out of general tax revenues.

Many of the issues involved in the original suit have been resolved and are not the subject of the present appeal. Allenhurst has withdrawn its appeal from the rulings of the trial judge which (1) invalidated the borough ordinance prohibiting the wearing of beach apparel on a public street and (2) required the borough to make its beach area available to non-club members on a daily basis at a uniform charge for residents and nonresidents.

The Attorney General no longer disputes "the right of the Borough to charge differential fees for membership in the Club as between residents and nonresidents of the Borough," in view of the evidence indicating that the construction of the club has been financed in part by taxation of borough residents and that the expense of its maintenance was being defrayed through general tax revenues.

Also, there has been no appeal from the ruling by the Appellate Division that Allenhurst was not required to open its club membership and facilities so as to provide for daily use. Nor is the Appellate Division's finding that the public has adequate means of access to the beach area questioned.

The sole issue remaining, which this Court is called upon to consider, is that posed by the dissent in the Appellate Division, namely, the question as to the duty of a municipality, either under the Public Trust Doctrine or a proper exercise of municipal power, to provide the public users of its oceanfront beach with access to existing toilet and changing facilities of a municipally owned beach club situated on or adjacent to the beach.

In *Bor. of Neptune v. Bor. of Avon-by-the-Sea, supra,* this Court held that a shore municipality, in the maintenance and operation of its public beaches, could not discriminate in any respect between residents and nonresidents. There involved was a higher fee schedule for nonresident users of the Avon public beach as compared with the fees charged residents. We held in *Avon* that fees for the

use of publicly owned and operated beaches had to be uniform, but we were not presented with the question whether the right to use and enjoy a public beach under the Public Trust Doctrine also extended to municipally owned and operated toilet and changing facilities adjacent to the public beach.

Our decision today in the companion *Deal* case does not reach this issue, as that municipality has provided toilet and changing facilities at its Pavilion which are open to users of its public beach. There is no contention made in that case that these facilities are inadequate.

The Attorney General's argument herein adopts the position taken by the dissenting Appellate Division judge, namely, that while a municipality is not required to provide toilet and changing facilities in connection with the maintenance and operation of its public beach, where such facilities exist adjacent to the public beach, they must be made available to users of the beach on a nondiscriminatory basis.

There is merit in this argument insofar as toilet facilities are concerned. In this day and age the providing of public toilet facilities is commonplace and in the interest of the public health and welfare. Where municipal toilet facilities exist adjacent to a public beach, no good reason appears why those using the beach area should not have access to such a basic accommodation. In the circumstances presented, restricting use to beach club members is an arbitrary and unreasonable exercise of municipal power and authority.

We need not rest this conclusion on the application of the Public Trust Doctrine to man-made improvements designed to complement a municipal beach area. Rather, we hold that where municipal toilet facilities exist adjacent to a public beach area, it would be an abuse of municipal power and authority to bar the users of the public beach from access to this basic accommodation.

As to facilities for changing into bathing attire, the situation is different. This type of accommodation is not in the

same category as toilet facilities which are related to the public health and welfare. Moreover, while the Allenhurst beach club has bath houses and cabanas, these are fully utilized on a season or half-season basis. Presumably, those assigned to these facilities leave their clothing and effects in them under lock and key. The beach club does not have general changing areas or lockers so that, as a practical matter, changing accommodations do not exist which are available to users of the public beach. Under all the circumstances, the contention of the Attorney General lacks merit.[2]

Our conclusion is that this matter be remanded to the trial court to enable defendant-borough to submit, within a reasonable time, a suitable plan for allowing those admitted to the public beach area to use the existing toilet facilities on the beach club property, or provide suitable alternatives. The judgment of the Appellate Division is modified accordingly.

MOUNTAIN, J., dissenting. The holding in this case is extremely narrow. It is contained in the following language of the majority opinion:

Where municipal toilet facilities exist adjacent to a public beach, no good reason appears why those using the beach area should not have access to such a basic accommodation. In the circumstances presented, restricting use to beach club members is an arbitrary and unreasonable exercise of municipal power and authority. [p. 196]

Lest it be the Golden Rule, I know of no law or precept that requires a municipality to do unto others as it does unto its own. None is cited in the majority opinion. The Legislature, which, rather than the courts, has the last word in

---

[2] No need for changing facilities for daily users of the public beach was shown. As noted, Allenhurst is tiny in size and its beach is not particularly suitable for bathing. Presumably, those using this facility would be local residents only who would change at home and walk the few blocks to the beach.

matters of this sort, has made very clear that the control of a municipal beach is to reside in its governing body. The applicable statute reads as follows:

*The governing body of any municipality bordering on the Atlantic Ocean*, tidal water bays or rivers which owns or shall acquire, by any deed of dedication .or otherwise, lands bordering on the ocean, tidal water bays or rivers, or easement rights therein, for a place of resort for public health and recreation and for other public purposes *shall have the exclusive control, government and care thereof and of any boardwalk, bathing and recreational facilities, safeguards and equipment, now or hereafter constructed or provided thereon*, and may, by ordinance, make and enforce rules and regulations for the government and policing of such lands, boardwalk, bathing facilities, safeguards and equipment; provided, that such power of control, government, care and policing shall not be construed in any manner to exclude or interfere with the operation of any State law or authority with respect to such lands, property and facilities. Any such municipality may, in order to provide funds to improve, maintain and police the same and to protect the same from erosion, encroachment and damage by sea or otherwise, and to provide facilities and safeguards for public bathing and recreation, including the employment of lifeguards, by ordinance, make and enforce rules and regulations for the government, use, maintenance and policing thereof and provide for the charging and collecting of reasonable fees for the registration of persons using said lands and bathing facilities, for access to the beach and bathing and recreational grounds so provided and for the use of the bathing and recreational facilities, but no such fees shall be charged or collected from children under the age of 12 years. [*N. J. S. A.* 40:61–22.20; emphasis added]

It is perfectly clear that there has been a delegation by the Legislature to the governing body of each municipality which owns a beach bordering on the Atlantic Ocean, of total and *exclusive* control of the beach area. Here there is no room for judicial intrusion. With great respect I submit that characterizing as arbitrary the failure of Allenhurst to provide facilities for all members of the public who may use the beach is simply altering a perfectly acceptable and valid legislative scheme to conform to what is no more than a judicial preference.

I dissent and would in all respects affirm the judgment of the Appellate Division.

*For modification and remandment* — Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—Justice MOUNTAIN—1.