PETER LUSARDI, PLAINTIFF, AND JUNE BRUETT, PLAINTIFF–
INTERVENOR–APPELLANT, v. CURTIS POINT PROPERTY
OWNERS ASSOCIATION, DEFENDANT–THIRD–PARTY–
PLAINTIFF–RESPONDENT, v. TOWNSHIP OF BRICK, THIRD–
PARTY–DEFENDANT.

Argued January 13, 1981—Decided June 4, 1981.

220

Richard K. Rosenberg argued the cause for appellant (*Richard K. Rosenberg*, attorney; *Steven E. Brawer* and *Richard K. Rosenberg* of counsel; *Steven E. Brawer*, on the brief).

Terrance P. Farley argued the cause for respondent (*Novins, Farley, Grossman & York*, attorneys).

Henry D. Blinder, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel; *David B. Harris*, Deputy Attorney General, on the brief).

Sandra T. Ayres, Assistant Deputy Public Advocate argued the cause for *amicus curiae* Public Advocate (*Stanley C. Van Ness*, Public Advocate, attorney).

Marc A. Vaida submitted a brief on behalf of *amicus curiae* New Jersey Institute of Municipal Attorneys (*Marc A. Vaida*

and *J. Albert Mastro*, President, New Jersey Institute of Municipal Attorneys, attorneys).

The opinion of the Court was delivered by

PASHMAN, J.

The Court must determine in this case whether Brick Township's zoning ordinance is invalid on the ground that it unlawfully prohibits recreational use of privately owned unimproved oceanfront property. More specifically, the issue is whether a municipality's obligation "to encourage the most appropriate use of land," *N.J.S.A.* 40:55D-62(a), prevents it from zoning vacant land along the Atlantic Ocean for single family residential use only. The trial court held that the Township's zoning ordinance is invalid insofar as it prohibits recreational use of oceanfront property where no residential use exists. It found that the ordinance is an unreasonable exercise of the zoning power in light of judicial, legislative and executive pronouncements establishing a statewide policy of encouraging recreational use of dry sand beach areas along the Atlantic Ocean. We agree.

I

The Curtis Point Property Owners Association, defendant and third-party plaintiff in this action, owns an oceanfront lot in Brick Township. The township has zoned virtually all lots bordering on the Atlantic Ocean for single family residential use. The zoning ordinance does not allow recreational use of the dry beach areas on these lots except as an accessory use to a permitted primary use. Besides single family residences, the permitted primary uses are churches, schools, municipal parks, and governmental or cultural buildings. The Association admittedly uses its lot for recreation in violation of the ordinance.

The Association is a group of homeowners from a bayside development located near the beachfront lot in question. One of the privileges of membership in the Association is the right to use the Association's lot for access to ocean bathing and for recreation on the beach.

The lot is 80 feet wide and extends about 400 feet from the highway to the mean high water mark. For 180 feet back from the highway, the property is overgrown with vegetation, except for a path worn along one side of the lot. The rest of the lot is beach area, roughly half of which is taken up by a dune. From the toe of the dune to the mean high water mark, a distance varying from 100 to 150 feet, is the dry sand beach area used for bathing and recreation.

In 1964 the original plaintiff, Peter Lusardi, initiated this litigation by filing a complaint seeking to enjoin the Association from using its property as a bathing beach or recreational area. The complaint alleged that the Association's use violated the zoning ordinance and created a nuisance to the plaintiff, particularly when large numbers of the Association's members overflowed onto his property. In 1965, after finding that the Association had violated the zoning ordinance by using its property for recreation without a permitted primary use, the trial court enjoined further use of the lot "as a bathing beach or recreation area, while the zoning laws of the State of New Jersey and Brick Township, affecting the subject matter of this case, remain as they are at the time of entry of this judgment." The Appellate Division affirmed the judgment.

Nothing further happened until 1974, when the successor in title to Lusardi moved to hold the Association in contempt for violating the 1965 judgment by continuing to use the lot for bathing and recreation. The Association moved to dismiss the injunction, arguing that this Court's decision in *Borough of Neptune City v. Borough of Avon-by-the-Sea,* 61 *N.J.* 296 (1972), had changed the law of this State, and that under the present law the zoning ordinance was invalid. The trial court entered an order finding the Association in contempt of court and reaffirming the injunction. This judgment was appealed.

The Appellate Division reversed the contempt order and remanded the matter to the Chancery Division for further proceedings. 138 *N.J.Super.* 44 (1975). The court held that the

contempt procedure employed had been improper and that the case should be treated as a motion in aid of litigant's rights under *R.* 1:10–5. *Id.* at 49–50. Because the suit implicated important issues of potential relevance to the public trust doctrine, the court ordered that the matter be remanded for development of a full and plenary record, with the intervention of the Attorney General and the Public Advocate on remand.

Plaintiff June Bruett, who owns the lot and single family house to the north of the Association's property, was also allowed to intervene in the remanded matter which proceeded to a plenary hearing in 1978. After the hearing the court issued an opinion finding that the recreational use of the Association's property had continued. While the court noted the occurrence of some littering, overflow of beach users onto adjoining property, and night activities that disturbed neighbors, it was unable to determine whether members of the Association or strangers were at fault. The court also found that the township's total prohibition of recreational use might be inconsistent with the public policy in favor of the enjoyment of ocean waters. Because the validity of the Brick Township zoning ordinance was drawn into question, the court ordered joinder of the township as an indispensable party.

After a third party complaint was served on the township, the trial court held a second hearing. In an opinion filed in 1979 the court found that within Brick Township there is only one municipal beach with ocean bathing, located less than a mile away from the Association's lot. The facility, which has approximately 36,000 square feet of beach area, sold 4,511 seasonal, 1,121 daily, and 1,139 weekend badges in 1978, indicating strong public demand for the limited facilities for ocean swimming. The court also observed that five other associations of property owners either owned dry beach property or held title to walkways to the ocean in the residential zone between the public beach and the Association's land. Two more such associations are located to the south of the public beach.

In spite of the municipality's argument that recreational use of beaches by large groups of people would disrupt the residential character of the neighborhood, the court invalidated the ordinance. It found a State policy of encouraging and protecting public access to and recreational use of dry sand beach areas along the Atlantic Ocean. The trial court derived this policy from decisions of this Court concerning the public trust doctrine, from the Beaches and Harbors Bond Act of 1977, *L.*1977, *c.* 208, and from the governor's New Jersey Coastal Management Program: Bay and Ocean Shore Segment. Because the township's ordinance contravened this policy, the court held that it was an unreasonable exercise of police power. The municipality's valid objectives of avoiding nuisance to neighbors could be achieved, the court held, by narrower regulations of the use of private beaches. Therefore, the court entered a judgment vacating the 1965 injunction, dismissing plaintiff's motion in aid of litigant's rights, and invalidating the Brick Township zoning ordinance as it applies to prohibit the Association's use of its oceanfront property.

Plaintiff-intervenor Bruett appealed to the Appellate Division from this judgment.[1] In addition to the Association, the Attorney General and the Public Advocate filed briefs as *amici curiae* urging that affirmance of the trial court's judgment will advance the public's interest in maximizing access to ocean beaches.

Before argument was heard in the Appellate Division, we certified the appeal on our own motion. 85 *N.J.* 101 (1980). The New Jersey Institute of Municipal Attorneys has filed a brief as *amicus curiae* in favor of reversal. The Institute argues that the statewide policy found by the trial court does not satisfy the criteria established in *So. Burlington Cty. N.A.A.C.P. v. Tp. of Mt. Laurel*, 67 *N.J.* 151 (1975), for invalidating a zoning

[1] The third-party defendant, Brick Township, did not appeal from the judgment invalidating its ordinance.

ordinance as contrary to the general welfare and that the ordinance is reasonable.[2]

## II

Zoning is an exercise of the State's power to protect the public health, safety and morals, and to promote the general welfare. *Taxpayers Association of Weymouth Tp., Inc. v. Weymouth Tp.*, 80 *N.J.* 6 (1976). Local governments have the power to zone only through legislative delegation of the State's police power. *N.J.Const.* (1947), Art. IV, § VI, par. 2. This delegation of power is currently embodied in the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –92.

Like other municipal ordinances, zoning ordinances are accorded a presumption of validity that can be overcome only by an affirmative showing that an ordinance is arbitrary or unreasonable. *Bow & Arrow Manor Inc. v. Town of West Orange*, 63 *N.J.* 335, 343 (1973). However, ordinances adopted under the Municipal Land Use Law must be consistent with the standards accompanying the grant of power. *Taxpayers Association of Weymouth Tp., supra*, 80 *N.J.* 6.

One standard contained in the Municipal Land Use Law is that municipalities should encourage uses that are appropriate to particular locations, especially where necessary to satisfy the needs of all citizens of this State. In passing the act the Legislature intended "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in

---

[2]As an initial matter, the plaintiff contends that the "law of the case" doctrine prevented the trial court from vacating the 1965 injunction. We disagree. The doctrine, as explained by the Appellate Division in *State v. Hale*, 127 *N.J.Super.* 407, 410–11 (1974), applies only to proceedings prior to the entry of a final judgment. After that, rules of *res judicata* determine whether a prior determination of law or fact is binding. In this case, the injunction is expressly modifiable if there is a change in the laws of this State as they apply to the Association's use of its property. Since the trial court found such a change, it could properly vacate the injunction.

a manner which will promote the public health, safety, morals, and general welfare." *N.J.S.A.* 40:55D–2(a). A further purpose was "[t]o provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens." *N.J.S.A.* 40:55D–2(g). To fulfill these purposes, the act requires that:

[t]he zoning ordinance shall be drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of land. [*N.J.S.A.* 40:55D–62(a)]

■ Ordinarily municipal officials have wide discretion in determining what uses are suitable for each district, and they need not provide for a particular use in a specified vicinity or for every appropriate use within the borders of the municipality. *See, e. g., Fanale v. Borough of Hasbrouck Heights,* 26 *N.J.* 320, 325 (1958). But this principle must be qualified where land has a unique character and a statewide policy designates what uses are appropriate for such land. Statewide policies are relevant to zoning decisions because municipalities exercise zoning power only through delegation of the State's authority and they must consider the welfare of all the State's citizens, not just the interests of the inhabitants in the particular locality. *See Mt. Laurel, supra,* 67 *N.J.* at 178. Local planning decisions must be consistent with statewide policies concerning land use and resource allocation.

### III

■ Oceanfront property is uniquely suitable for bathing and other recreational activities. Because it is unique and highly in demand, there is growing concern about the reduced "availability to the public of its priceless beach areas," *Van Ness v. Borough of Deal,* 78 *N.J.* 174, 180 (1978). This concern is reflected in a statewide policy of encouraging, consonant with environmental demands, greater access to ocean beaches for recreational purposes. Expressions of this policy can be found

in three sources: the decisions of this Court concerning the public trust doctrine, *Van Ness v. Borough of Deal, supra; Hyland v. Borough of Allenhurst*, 78 *N.J.* 190 (1978); *Borough of Neptune City v. Borough of Avon-by-the-Sea, supra*, legislation such as the Beaches and Harbors Bond Act of 1977, *L.* 1977, *c.* 208, and the Coastal Resource and Development Policies promulgated by the Department of Environmental Protection, *N.J.A.C.* 7:7E–1.1 to –9.23.

 The public trust doctrine is premised on the common rights of all the State's citizens to use and enjoy the tidal land seaward of the mean high water mark. *See Neptune, supra,* 61 *N.J.* at 303. These rights are "not limited to the ancient prerogatives of navigation and fishing, but extend as well to recreational uses, including bathing, swimming and other shore activities." *Id.* at 309. Because the use of dry sand beaches is practically inseparable from enjoyment of ocean swimming, we have expanded the scope of the doctrine to include public accessibility to municipally owned beaches. *Id. See also Van Ness, supra; Hyland, supra.*

As defined in *Neptune* and *Van Ness*, the public trust doctrine is not directly applicable to this case, which concerns the exercise of zoning power. The right of access by the Association's members to the tidal lands seaward of their property is not disputed; nor are we called upon to recognize under the public trust doctrine a private owner's right to use upland beaches for recreation. Hence, we give the public trust doctrine no greater scope today than it has previously enjoyed—cases involving local legislative supervision and control of undeveloped, municipally owned public beaches. *See Van Ness, supra,* 78 *N.J.* at 179; *Hyland, supra,* 78 *N.J.* at 196; *Neptune, supra,* 61 *N.J.* at 308–09. Nevertheless, the doctrine and the decisions defining its scope signify the desirability of encouraging shore municipalities to permit greater public access to the State's precious ocean beaches for recreational purposes.

The Legislature expressed a similar policy in the Beaches and Harbors Bond Act of 1977, *L.*1977, *c.* 208. The Act contains a legislative finding that the "State's growing population ... require[s] and should have a clean, *adequate* and *accessible* shoreline." *Id.*, § 2(b)(emphasis added).

Finally, the most detailed expression of this State's policies concerning the appropriate uses of shoreline resources is found in the regulations promulgated by the Department of Environmental Protection pursuant to the Coastal Area Facility Review Act, *N.J.S.A.* 13:19–1 to –21. *See N.J.A.C.* 7:7E–1.1 to –9.23. These regulations define the standards to be used in reviewing applications for permits to construct facilities in the State's coastal areas. *N.J.A.C.* 7:7E–1.1. In particular, resort-recreation uses have priority over all other uses, "with highest priority reserved for those uses that serve a greater rather than a lesser number of people." *N.J.A.C.* 7:7E–8.13(a). The rationale for this policy is that "national and state interests in recreation are ... essential for the quality of life. The coastal environment provides numerous opportunities for recreation which should be expanded by public policy and action ...." *N.J.A.C.* 7:7E–8.13(b). "Shoreline development that limits public access and the diversity of shorefront experiences is discouraged." *N.J.A.C.* 7:7E–9.12(a). Also important is the administrative recognition of the need to preserve undeveloped beach areas. *N.J.A.C.* 7:7E–3.10(c).[3] Although these regulations do not preempt local zoning authority, they embody carefully considered policies for the use of coastal resources that local officials must take into account in zoning shoreline property within their communities.

---

[3] In the development of valid and sound zoning regulation, municipalities may consider the public policy of this State that every person has a substantial interest in protecting the State's environment from pollution, impairment and destruction. *See N.J.S.A.* 2A:35A–2. This policy of preserving the environment, although not directly implicated here, is properly effectuated through the zoning power. *N.J.S.A.* 40:55D–2(e), (g), (i), (j), and may influence local zoning decisions.

IV

■ The validity of Brick Township's zoning ordinance must be assessed in light of these policies. It is immediately apparent that the township has made no effort to accommodate the State policy of affording recreational opportunities along the Atlantic seacoast for as many citizens as possible. The land lying along the coastline is subject to the same restrictions as inland residential property. By dedicating most of its land along the Atlantic Ocean to single family residential use, which does not permit primary recreational use of undeveloped land, the township has unreasonably restricted the ability of private organizations to engage in quasi-public recreational activities on their property. This scheme clearly conflicts with State priorities for the use of the State's oceanfront resources. Thus, the ordinance is not "drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of land," as the Municipal Land Use Law requires. *N.J.S.A.* 40:55D–62(a).

■ In defense of the ordinance, *amicus* New Jersey Institute of Municipal Attorneys argues that the zoning scheme furthers two legitimate goals. First, the ordinance preserves the residential character of the neighborhood—a goal that this Court has recognized as a proper zoning purpose, *Home Builders League of South Jersey, Inc. v. Tp. of Berlin,* 81 *N.J.* 127, 144–45 (1979). But this goal must yield to the State policy that public recreational use is, when consistent with environmental concerns, uniquely appropriate for oceanfront beaches. If the character of existing development were to preclude this use, then it would be impossible to fulfill the State's policy.

■ The second goal that the ordinance serves is to maintain a certain aesthetically pleasing oceanfront surrounding by allowing neighboring residents to enjoy their property in a peaceful, solitary, and residential setting. Solitary walks along the shore and tranquil evenings spent among friends on the beach comprise a dream that many of us share. But this dream may not

be fulfilled by excluding others who ask for only the simpler pleasure of engaging in ocean bathing and beach activities from their own property. The ocean water along our coastline belongs to all the citizens of this populous State; a municipality may not unreasonably prevent private organizations from expanding the number of citizens able to enjoy its pleasures.

This restriction does not mean that the township may not, through more precisely drawn zoning or other regulations, achieve its valid objectives of avoiding unnecessarily disruptive behavior, overcrowding, and littering, or of protecting environmentally fragile oceanfront property, such as irreplaceable sand dunes, for the benefit of future generations. These problems can be alleviated through reasonable ordinances directed at specific abuses and through the use of the general police power. *See State v. Baker*, 81 *N.J.* 99, 114–15 (1979); *Kirsch Holding Co. v. Borough of Manasquan*, 59 *N.J.* 241, 253–54 (1971). For example, an area-related occupancy restriction limiting the number of people who may use a beach at one time based on the size of the dry sand beach area would be appropriate. The regulation must not, however, place so great a burden on recreational use of undeveloped beaches as to prevent the fulfillment of the State policy of encouraging maximum access to the ocean beach.

A final objection raised by the plaintiff is that the trial court's judgment amounts to spot zoning, which will do little to further the public policy. This objection has some merit, since the judgment invalidates the ordinance only as it applies to the Association's property. The judgment in this case need not have been so narrow. Therefore, we hold that the ordinance is invalid to the extent that it prevents the owners of undeveloped oceanfront lots along all of Brick Township's Atlantic coastline from using the dry sand beach areas of their property primarily for recreational purposes.

Accordingly, we modify the judgment of the trial court and, as modified, we affirm.

*For modification and affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.