114 N.J. Super. 132 (1971)
275 A.2d 154
WILLIAM DEAN, PLAINTIFF-APPELLANT,
v.
UNIVERSAL C.I.T. CREDIT CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1971.
Decided March 15, 1971.
*134 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. William Dean argued the cause Pro Se.
Mr. Martin J. Cohen argued the cause for respondent (Messrs. Green, Lasky and Cohen, attorneys).
The opinion of the court was delivered by MOUNTAIN, J.A.D.
Plaintiff appeals from an order granting defendant's motion for summary judgment. Both in the court below and on this appeal he appears pro se.
On May 20, 1968 plaintiff entered into an installment sales contract with Don DeMar Motors, Inc. to purchase a new 1968 Plymouth Fury, 4 door sedan. The cash price of the vehicle  the amount the seller would have charged had he received an immediate payment for the full purchase price  was $3,289.50. Plaintiff's trade-in allowance on his old car together with a cash down payment totaled $831.50, leaving a balance of $2,498. To this were added the following:

 Sales tax $ 78.00
 Insurance premium 169.00
 Credit Life insurance 38.17
 Time price differential 411.15
 ________
 $ 696.32

Thus the time balance  the amount still to be paid in installments over the life of the contract  was $3,154.32.
According to defendant, it thereafter received a total of $1,218.68 in monthly installments. Plaintiff believes that *135 more than this was paid. In September 1969  the exact date is in dispute  defendant repossessed the vehicle, basing its right to do so upon a claim that plaintiff was in default. Sometime thereafter plaintiff initiated this action. The complaint is inartistically drawn but may be said to set forth a claim that the repossession was improper since there was no default. Relief is sought in the form of damages, or in the alternative by specific restoration of the parties to their respective positions before the repossession  the car to be returned to plaintiff and his contractual obligation to make monthly payments to continue as before. He also demands that personal property, in the car when it was taken by defendant, be returned to him. Defendant's answer asserted that a default existed at the time of repossession and that all personal property found in the car had been returned.
Thereafter defendant moved for summary judgment, the motion being accompanied by a supporting affidavit. Plaintiff filed no responsive affidavit but appeared in court in opposition to the motion. No point seems to have been made of his failure to file an affidavit nor did the judge direct that this be done. Rather, plaintiff was allowed to present his case orally but not under oath. While we do not approve this practice nor believe it should be encouraged, it was perhaps excusable under the circumstances here present. In any event we choose to overlook this failure on the part of the plaintiff and, like the trial court, will treat plaintiff's oral statements as if properly made under oath. In so doing, we reach the conclusion that defendant's motion should have been denied. Plaintiff's statement of alleged facts countered defendant's claims in at least two important respects. He first insisted that upon the day the car was repossessed he was not in default, claiming he had made all required payments, and secondly that defendant had agreed that certain payments need not have been made punctually. On the argument before us he produced a letter from defendant, which at least to some extent supported this latter claim. Of *136 course on motion for summary judgment the materials presented by the party against whom the motion is made will be treated with indulgence. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Accordingly we reverse and remand for a full trial.
Since at the trial the judge will be called upon not only to consider the testimony of the parties, but also to scrutinize the particular contract before the court, we deem it appropriate to comment briefly upon some of its terms as well as upon certain alleged conduct on the part of defendant.
The contract between the parties, couched in the form of a security agreement, was clearly drafted having in mind the provisions of the Retail Installment Sales Act of 1960, N.J.S.A. 17:16C-1 et seq., no reference to which, however, appears anywhere in the record or in any brief. This act was saved from repeal when the Uniform Commercial Code was adopted, N.J.S.A. 12A:10-104, and was expressly given precedence over the later legislation in case of conflict.
A transaction, although subject to this chapter, is also subject to the provisions of those statutes set forth as saved from repeal by this subtitle in Section 12A:10-104 and in case of conflict between the provisions of this chapter and any such statute so saved from repeal, the provisions of such statute control. [N.J.S.A. 12A:9-203 (2)]
See also N.J.S.A. 12A:9-201.
N.J.S.A. 17:16C-22 provides that,
No retail installment contract shall be signed by any party thereto when such contract contains blank spaces to be filled in after such contract has been signed; * * *.
N.J.S.A. 17:16C-23 states that,
A copy of the retail installment contract shall be furnished by the retail seller to the retail buyer at the time the retail buyer signs the contract except that such copy need not contain the signature of the retail seller.
*137 Plaintiff tells us that he signed the contract in blank and was given only a copy which, except for two insertions  one erroneous  was no more than the printed form which required many insertions to be complete. This document forms part of the record before us. If these statements are true, there would appear to have been a violation of each of the statutory provisions last cited. Defendant has as yet had no opportunity to respond to these charges, which are not, at least in the first instance, directed against it. They are rather directed initially against Don DeMar Motors, Inc., the retail seller, which is not presently a party to this suit. The importance of compliance with these protective provisions is evidenced by other sections of the same statute. We assume that the retail seller, Don DeMar Motors, Inc., is licensed as a motor vehicle installment seller and that defendant is licensed as a sales finance company. N.J.S.A. 17:16C-2. It will be noted that violations such as plaintiff alleges occurred here, if proven, may be ground for suspension or revocation of license in respect of either type of licensee. N.J.S.A. 17:16C-10.
We turn to a brief consideration of the contract itself. It is the kind of document often used in this type of transaction  a two-page form most of which is in very fine print, requiring a number of insertions for its completion. That it was prepared by defendant is obvious and not disputed. A legend referring to defendant appears on the first page and the "Dealer's Assignment" on the second page sets forth, in print, "Universal C.I.T. Credit Corporation" as assignee. We hasten to add that we find nothing inherently wrong in the fact that a particular form of retail installment contract is prepared by a sales finance company and distributed for use to individual retail sellers, whether of motor vehicles or of other products. The extent of this practice is such as to permit of its being judicially noticed. We do, however, find fault with various particular contractual provisions.
In very small type appears the following,
*138 If Seller assigns this contract, Seller shall not be assignee's agent for receipt of payments or for any other purpose. No agreement, representation or warranty shall be binding on assignee unless stated herein. Customer will settle all claims, set-offs and defenses against Seller directly with Seller, and not assert them against assignee.
This clause is essentially similar to a provision considered in Unico v. Owen, 50 N.J. 101, 123 (1967). The effort on the part of the draftsman in each case is to bestow upon the assignee of the contract the same privileged position to which the holder in due course of a negotiable instrument is entitled. As Justice Francis observed in Unico,
* * * we consider that the clause is an unfair imposition on a consumer goods purchaser and is contrary to public policy.
The plain attempt and purpose of the waiver is to invest the sale agreement with the type of negotiability which under the Negotiable Instruments Law would have made the holder of a negotiable promissory note a holder in due course and entitled to recover regardless of the seller-payee's default. [Unico v. Owen at 123-4]
While we readily concede that all of the facts and circumstances present in Unico may not exist here  for instance, the relationship between defendant and the retail seller here is almost certainly less close than was the relationship between distributor and financer in Unico  nevertheless we read the opinion in that case to hold that such a clause as that quoted above, at least in the area of consumer sales, will not be enforced. 50 N.J. at 125; N.J.S.A. 12A:9-206 and 12A:2-302.
Elsewhere in the contract it is said that,
Customer [plaintiff] assigns to holder any insurance proceeds related to persons or property including return or unearned premiums, for application to the unpaid balance. Customer directs any insurer to pay holder directly and appoints holder as attorney-in-fact to indorse any draft. * * *.
The last sentence in this clause is also unenforceable as in violation of N.J.S.A. 17:16C-37, which stipulates that,
*139 No retail installment contract or separate instruments executed in connection therewith shall contain any power of attorney to confess judgment or any other power of attorney. [Emphasis supplied]
We further note that upon default (without notice and without the interposition of any grace period) insurance may be cancelled; that "Time is of the essence," and that upon default the maturity of the unpaid balance may be instantly accelerated. While the potentiality for hardship is apparent, these provisions seem not to violate any statute.
At the time defendant moved for summary judgment it also moved for leave to file a counterclaim for whatever deficiency might be due, and the motion was granted. This places in issue the propriety of whatever steps may have been taken by defendant following repossession. We allude to this phase of the case because, as mentioned below, it will probably come before the court at the trial.
The contract states that,
Customer shall be barred from claiming that collateral, when repossessed, contained anything not included herein, unless he notifies holder by registered mail within 5 days of repossession.
If taken literally, this clause would prevent the retail buyer from claiming valuables that might be contained in the glove compartment or trunk of a repossessed car were he not to move with the degree of expedition required by the provision quoted. This clause is unconscionable and should not be enforced. N.J.S.A. 12A:2-302. Personal property that may be found in a motor vehicle at the time of repossession forms no part of the financer's collateral.
The contract further states that,
It is agreed that collateral is the subject of widely distributed standard price quotations and is customarily sold in a recognized market * * *
This is an effort to come within the favor of N.J.S.A. 12A:9-504(3), as is also true of the further clause that,
*140 * * * the collateral may be sold, leased, or otherwise disposed of, with or without notice, publicly or privately, with or without having the collateral at the sale, and holder may acquire the collateral at any such disposition. Sale to a dealer is a commercially reasonable disposition. If prior notice of disposition of collateral is required, 5 days' notice is reasonable.
It appears from what we have been told that the collateral has been sold following repossession. The effect, if any, to be given by the trial court to these provisions must be studied in the light of the actual facts as they may be found, having in mind the terms of N.J.S.A. 12A:9-501 to 12A:9-507. Particular attention should be given N.J.S.A. 12A:9-505 (1) since it would appear that somewhat more than "sixty per cent of the cash price" has been paid.
Plaintiff should be allowed to amend his complaint and defendant its answer and counterclaim to set forth any relevant facts, claims or defenses that may have occurred or arisen since the filing of the complaint.
The case is reversed and remanded for further proceedings not inconsistent with this opinion.