264 N.J. Super. 172 (1993)
624 A.2d 85
ANASTASIA P. SLOWINSKI, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
VALLEY NATIONAL BANK, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND CARL OLIVERA AND JEFFREY WEINERT, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1993.
Decided May 11, 1993.
*175 Before Judges MICHELS, BAIME and WALLACE.
Howard J. Wasserman argued the cause for appellant and cross-respondent (Carlet, Garrison & Klein, attorneys; Mr. Wasserman, of counsel and on the brief).
Cynthia D. Richardson argued the cause for respondent and cross-appellant (Porzio, Bromberg & Newman, attorneys; Ms. Richardson, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted defendant Valley National Bank (Valley National) leave to appeal from a summary judgment of the Law Division that declared it liable to plaintiff Anastasia P. Slowinski for damages she sustained as a result of the wrongful repossession of her property and from an order dismissing its counterclaims. Plaintiff cross appeals from an order that denied her motion for summary judgment against Valley National grounded on claims of conversion and unconscionable commercial practices.
A brief review of the procedural history and factual background is necessary for an understanding of the issues raised on this appeal. On October 27, 1990, plaintiff went to Headquarters Buick/Nissan (Headquarters) in response to a mailed advertisement to negotiate the purchase of a new car. She decided on a 1990 Nissan Sentra and put down a $300 deposit. Apparently, plaintiff was not obligated to go through with the deal at that time. Plaintiff returned to Headquarters on November 17, 1990 with the intent of either retrieving her deposit or striking a deal for the car if she was satisfied with the offer. She initially spoke with salesman defendant Jeffrey Weinert (Weinert), but was then referred to a salesman named Richard. Plaintiff discussed the *176 price of the car with Richard and then agreed to fill out a purchase order. Because it was late in the day, however, Richard went home and Weinert filled out the purchase order.
Plaintiff admits signing the purchase order, which provided that the total cost of the car was $11,789 and that plaintiff would have to finance $7,011.83, after factoring in the value of her trade-in and her down payment. Plaintiff claims she intended and agreed to finance only $7,011.83 plus $595.00 for the installation of a car alarm. Plaintiff claims that she was told by defendant Carl Olivera (Olivera), who handled the financing, that a financing agreement was not necessary until he contacted the bank to negotiate terms. Thus, plaintiff claims that no financing agreement was signed that evening, although she did fill out credit applications. Plaintiff admits, however, that she took possession of the car that evening. She claims that Weinert told her she had to take the car that night because Richard wanted to get the cars off the lot.
Plaintiff claims that she called Olivera twice afterwards to ascertain the status of the financing arrangements. Plaintiff further claims that the first indication to her that the loan terms had been finalized was when she received a loan payment book from Valley National in the mail on December 15, 1990. She noted that the loan amount was in excess of what she had agreed to finance the evening of November 17, 1990. On December 18, 1990, she returned to Headquarters and requested to see the loan documents. She was given a First Atlantic Automobile Club membership application, a Vehicle Service Contract, and a Retail Installment Sales Agreement. All three documents bore the purported signature of plaintiff and were dated November 17, 1990. Plaintiff claims that she did not knowingly sign any of these documents and that she did not agree to finance $9,683.06 at an interest rate of 18% as indicated on the allegedly forged contract.
On February 8, 1991 plaintiff instituted this action against Headquarters, Olivera and Weinert, alleging violations of the Federal Truth in Lending Act, unconscionable commercial practices, *177 various allegations of fraud and misrepresentation, negligent hiring and supervision and intentional infliction of emotional distress. Headquarters went bankrupt and plaintiff continued against Olivera and Weinert, claiming generally that they forged her name on car loan applications, causing her to be obligated to Valley National on a loan greater in amount than she intended or agreed.
By this time, Valley National had already documented plaintiff as delinquent on the loan and sent her account for collection. On January 22, 1991 and February 25, 1991, plaintiff's attorney contacted Valley National, requesting that all action with respect to the account be suspended until the fraud allegations were settled. Valley National evidently refused and, by letter dated June 15, 1991, plaintiff's attorney informed Valley National that absent any offers to settle, plaintiff would seek a judgment against it. In August 1991, plaintiff was granted leave to amend her complaint to include Valley National as a defendant.
On August 23, 1991, a default judgment was entered against Olivera and a proof hearing for damages was scheduled for October 22, 1991. In the meantime, on September 5, 1991, plaintiff filed an amended complaint, adding Valley National as a defendant. Plaintiff sought declaratory relief stating that she was not liable on the fraudulent loan. The summons was not served on Valley National, however, until October 28, 1991, after the proof hearing.[1]
The proof hearing was held on October 22, 1991. Neither Olivera nor Valley National appeared. Plaintiff testified that she did not sign the documents in question. In addition, Donna Scalia, a handwriting expert hired by plaintiff, testified that the signatures on the First Atlantic Automobile Club Service Form and the *178 Vehicle Service Contract were forged. Ms. Scalia further testified that the signatures on the Purchase Order/Credit Application and the Retail Sales Agreement may not be authentic. At the conclusion of the proofs, the trial court found Olivera liable under the Federal Truth in Lending Act and awarded plaintiff damages in the total sum of $17,331.79. However, the trial court specifically noted that the decision had no bearing on the liability of Valley National.
On December 9, 1991, Valley National answered plaintiff's amended complaint, denying liability generally and asserting, among other affirmative defenses, that plaintiff's complaint failed to state a cause of action upon which relief may be granted. Thereafter, plaintiff and Valley National engaged in settlement negotiations. By letter dated February 10, 1992, plaintiff offered $6,500 to settle the outstanding loan balance. On February 26, 1992, Valley National rejected this offer and stated that an additional $2,000 would be needed to settle the matter. On May 1, 1992, plaintiff authorized her attorney to make a final offer of settlement for $7,500. Before this offer could be communicated to Valley National, plaintiff discovered on May 5, 1992 that her car had been repossessed. She delivered the keys to Valley National and requested the return of her personal possessions. Valley National did not return plaintiff's personal items, claiming that plaintiff can travel to Fair Lawn, New Jersey to obtain them. Plaintiff apparently was unwilling to take time off from work to do that.
Plaintiff then filed a supplemental complaint against Valley National, alleging wrongful repossession, conversion, trespass, unconscionable commercial practices and breach of the duties of good faith and fair dealing. Valley National denied the allegations and counterclaimed for the payment of the balance due on the loan plus interest, costs, and fees. Plaintiff moved for partial summary judgment on the claims of wrongful repossession, conversion and unconscionable commercial practices in violation of the Consumer Fraud Act and for dismissal of Valley National's counterclaims. Valley National moved for dismissal of plaintiff's claims and for *179 summary judgment on its counterclaims, or, alternatively, for permission to amend its answer, which had inadvertently omitted denials of the forgery allegations in the original complaint. Following argument, the trial court granted summary judgment as to liability for wrongful repossession in favor of plaintiff, dismissed Valley National's counterclaims with prejudice, and dismissed plaintiff's claims based on conversion and unconscionable commercial practices with prejudice. This appeal and cross-appeal followed.

I.
Valley National first contends that the trial court erred in ruling that it was barred by the doctrine of "law of the case" from litigating the issues of fraud and forgery. The trial court refused to allow Valley National to litigate the issue of whether plaintiff's signature had been forged on the loan documents because judgment had been entered in plaintiff's favor on this issue in her suit against Headquarters. The trial court held that although Valley National was excluded from the prior ruling, there was enough evidence to support the finding of forgery made at the proof hearing. Furthermore, the trial court did not find any of the evidence presented by Valley National to prove the authenticity of the signature to be persuasive.
The application of the "law of the case" doctrine in New Jersey was thoroughly explained in State v. Hale, 127 N.J. Super. 407, 410-11, 317 A.2d 731 (App.Div. 1974). There we stated:
It has been generally stated that the "law of the case" doctrine "applies to the principle that where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit." Wilson v. Ohio River Company, 236 F. Supp. 96, 98 (S.D.W. Va. 1964), aff'd 375 F.2d 775 (4 Cir.1967). This rule is based upon the sound policy that when an issue is once litigated and decided during the course of a particular case, that decision should be the end of the matter. United States v. U.S. Smelting Refin. & M. Co., 339 U.S. 186, 198, 70 S.Ct. 537 [544], 94 L.Ed. 750 (1950). "Law of the case" most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, or upon a different appellate panel which may be asked to reconsider the same issue in a subsequent appeal. 5 Am.Jur.2d, Appeal and Error, § 744 at *180 188-189 (1962); Scamahorne v. Commonwealth, 376 S.W.2d 686 (Ky. Ct. App. 1964). A final judgment is required in order to sustain an application of the rule, just as it is for the kindred rule of res judicata. United States v. U.S. Smelting Refin. & M. Co., supra, 339 U.S. at 199, 70 S.Ct. at 544.
The doctrine of "law of the case" is also applied to the question of whether or not a decision made by a trial court during one stage of the litigation is binding throughout the course of the action. 5 Am.Jur.2d, supra at 189. The use of the doctrine in this situation avoids repetitious litigation of the same issue during the course of a single trial. With respect to this aspect of "law of the case" it has been generally stated that "the `law of the case' concept is merely a non-binding decisional guide addressed to the good sense of the court in the form of `a cautionary admonition' against relitigation `when the occasion demands it.'" Ross Products, Inc. v. N.Y. Merchandise Co., 242 F. Supp. 878, 879 (S.D.N.Y. 1965). The distinction between the doctrine of "law of the case" and res judicata is readily apparent: "one directs discretion: the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." Southern Ry. Co. v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922). "Law of the case" therefore operates as a discretionary rule of practice and not one of law. United States v. U.S. Smelting Refin. & M. Co., supra, 339 U.S. at 199, 70 S.Ct. at 544. See 5 Am.Jur.2d, supra at 189, wherein it is stated:
The doctrine of the law of the case has certain affinities with, but is clearly distinguishable from, the doctrines of res judicata and stare decisis, principally on the ground that the rule of the law of the case operates only in the particular case and only as a rule of policy and not as one of law.
See also West Point Island Savings Ass'n v. Dover Tp. Comm., 54 N.J. 339, 344, 255 A.2d 237 (1969); United States v. U.S. Smelting Refin. & M. Co., supra.

The principles set forth in State v. Hale, supra, have been uniformly adopted and followed by our courts. See, e.g., Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991); State v. Reldan, 100 N.J. 187, 203-205, 495 A.2d 76 (1985); Lusardi v. Curtis Point Property Owners Ass'n, 86 N.J. 217, 226 n. 2, 430 A.2d 881 (1981); Daniel v. State Dep't of Transp., 239 N.J. Super. 563, 581-82, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990); Sisler v. Gannett Co., Inc., 222 N.J. Super. 153, 159-60, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988); Ayers v. Jackson Township, 202 N.J. Super. 106, 128, 493 A.2d 1314 (App.Div. 1985), aff'd in part and rev'd in part, 106 N.J. 557, 525 A.2d 287 (1987); see also Warren Township v. Suffness, 225 N.J. Super. 399, 408, 542 A.2d 931 (App.Div.), certif. denied, 113 N.J. 640, 552 A.2d 166 (1988).
Application of the "law of the case" doctrine to this case was wholly inappropriate because the doctrine is restricted to *181 preventing relitigation of the same issue in the same suit. See State v. Reldan, supra, 100 N.J. at 203, 495 A.2d 76 ("decisions of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case") (emphasis added); Lusardi v. Curtis Point Property Owners Ass'n, supra, 86 N.J. at 226 n. 2, 430 A.2d 881 ("law of the case" doctrine "applies only to proceedings prior to the entry of a final judgment"); Warren Township v. Suffness, supra, 225 N.J. Super. at 408, 542 A.2d 931 ("The purpose of the law of the case doctrine is to avoid relitigation of the same issue `in the same suit.'"); State v. Hale, supra, 127 N.J. Super. at 410-11, 317 A.2d 731 ("law of the case" doctrine "avoids repetitious litigation of the same issue during the course of a single trial," in trial court in event of remand and in an appellate court on reconsideration) (emphasis added).
The litigation between plaintiff and Headquarters and Olivera was not the "same suit" that existed between plaintiff and Valley National. Valley National was served with a separate complaint after default had already been entered against Olivera and after the proof hearing on damages took place. Valley National was not included in the prior suit and, indeed, the trial court stated at the proof hearing "I'm not making any determinations with respect to the bank." Default judgment against Olivera ended the litigation with respect to Olivera and, therefore, "law of the case" was no longer applicable to the issues addressed in that suit, including the merits of the forgery allegations. See Lusardi v. Curtis Point Property Owners Ass'n, supra, 86 N.J. at 226 n. 2, 430 A.2d 881 ("law of the case" doctrine "applies only to proceedings prior to the entry of a final judgment"); Sisler v. Gannett Co., Inc., supra, 222 N.J. Super. at 160, 536 A.2d 299 ("if the interests of justice will be served, a prior ruling may be relitigated before final judgment") (emphasis added).
Beyond this, even if the "same suit" was somehow involved here, the "law of the case" doctrine is still inapplicable because the doctrine only has effect where the issue has been actually contested and decided. In Lanzet v. Greenberg, supra, *182 126 N.J. at 192, 594 A.2d 1309, the Supreme Court clearly stated "[f]or the determination of an issue to constitute the law of the case, ... the issue must have been contested and decided." Accord Daniel v. State, Dep't of Transp., supra, 239 N.J. Super. at 581, 571 A.2d 1329 ("Law of the case" doctrine avoids relitigation of question that has previously been "litigated and decided in a suit.") (emphasis added). Because a default judgment was entered against Olivera, the allegations presented by plaintiff were deemed uncontested, thereby bypassing the litigation stage. See Scott v. Scott, 190 N.J. Super. 189, 195, 462 A.2d 614 (App.Div. 1983). Thus, we hold that the trial court erred in applying the doctrine of "law of the case" to preclude Valley National from litigating plaintiff's forgery and fraud allegation, and remand for determination of these issues on the merits.
Since we are remanding this matter for further proceedings, we offer the trial court our additional view that the doctrine of collateral estoppel, which bars the relitigation of issues "actually determined in a prior action between the same parties and their privies involving a different claim or cause of action," Allesandra v. Gross, 187 N.J. Super. 96, 103, 453 A.2d 904 (App.Div. 1982); accord State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977); New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J. Super. 293, 297, 391 A.2d 923 (App.Div. 1978), would be equally inapplicable to bar Valley National's litigating the issues of fraud and forgery. The doctrine of collateral estoppel "precludes relitigation only of questions `distinctly put in issue' and `directly determined' adversely to the party against which the estoppel is asserted." Eatough v. Board of Medical Examiners, 191 N.J. Super. 166, 175, 465 A.2d 934 (App.Div. 1983); accord Plainfield v. Public Serv. Elec. and Gas Co., 82 N.J. 245, 257, 412 A.2d 759 (1980); Washington Township v. Gould, 39 N.J. 527, 533, 189 A.2d 697 (1963). To preclude relitigation of an issue, it must be shown that:
(1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party *183 to the earlier adjudication. [State v. Gonzalez, supra, 75 N.J. at 189, 380 A.2d 1128].
Accord Allesandra v. Gross, supra, 187 N.J. Super. at 105, 453 A.2d 904; see also Matter of McMillan, 579 F.2d 289, 291-92 (3d Cir.1978).
Application of this three-part test compels the conclusion that Valley National will not be precluded from disputing the merits of plaintiff's fraud and forgery claims under a collateral estoppel theory. Although the first part of the test may be satisfied because the issue involved in the suit against Olivera was identical to the issue raised by Valley National, that is, whether plaintiff signed the loan papers and accepted the financing terms, the second part of the test is not satisfied because the default judgment that was entered against Olivera was, without a doubt, not a decision "on the merits."
"On the merits" means that the factual issues directly involved must have been actually litigated and determined. See Allesandra v. Gross, supra, 187 N.J. Super. at 105, 453 A.2d 904; see also Robinson-Shore Dev. Co. v. Gallagher, 26 N.J. 59, 68, 138 A.2d 726 (1958); Restatement (Second) of Judgments, § 27 comments d and e (1982). Although plaintiff offered her own testimony and the report of a handwriting expert at the proof hearing to support her allegations of fraud and forgery, this evidence was not presented in an adversarial context. A successful plaintiff in any default judgment can be required to furnish some proof on the merits of the issues to show entitlement to the relief demanded. See Douglas v. Harris, 35 N.J. 270, 276-77, 173 A.2d 1 (1961); Scott v. Scott, supra, 190 N.J. Super. at 195, 462 A.2d 614; Edelstein v. Toyota Motors Distrib., 176 N.J. Super. 57, 63, 422 A.2d 101 (App.Div. 1980); Johnson v. Johnson, 92 N.J. Super. 457, 464-65, 224 A.2d 23 (App.Div. 1966); Metric Inv., Inc. v. Patterson, 98 N.J. Super. 130, 133, 236 A.2d 187 (Law Div. 1967), aff'd, 101 N.J. Super. 301, 244 A.2d 311 (App.Div. 1968). However, the entry of the default precluded Olivera from offering any testimony in *184 defense. See Scott v. Scott, supra, 190 N.J. Super. at 195, 462 A.2d 614. Thus, the issues of fraud and forgery were never actually litigated and determined.
Additionally, Valley National was not involved in the previous action nor was it a party in privity with Olivera such that it could be precluded from arguing these factual issues. Collateral estoppel was formerly available only where there was mutuality of estoppel, which required identity of the parties (or their privies) in the initial and subsequent actions. See State v. Gonzalez, supra, 75 N.J. at 188, 380 A.2d 1128 (quoting Miller v. Stieglitz, 113 N.J.L. 40, 44, 172 A. 57 (E. & A. 1934)). The rationale underlying this rule was that it would be "unfair to provide a right or remedy to a party if it was unavailable to his adversary." Ibid. The modern rule, and the rule in New Jersey, however, is to distinguish between those who may assert a plea of collateral estoppel and those against whom such a plea may be asserted. See id. at 188-89, 380 A.2d 1128; United Rental Equip. Co. v. Aetna Life & Casualty Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977); McAndrew v. Mularchuk, 38 N.J. 156, 161, 183 A.2d 74 (1962); Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 164-65, 549 A.2d 437 (App.Div. 1988); Allesandra v. Gross, supra, 187 N.J. Super. at 104-105, 453 A.2d 904; Ettin v. Ava Truck Leasing, Inc., 100 N.J. Super. 515, 527, 242 A.2d 663 (App.Div. 1968), aff'd in part and rev'd in part, 53 N.J. 463, 251 A.2d 278 (1969).
Valley National was neither a party nor in privity with a party to the prior action. Valley National was not served with the complaint until after default judgment was entered against Olivera and after the proof hearing for damages was held. Nor was Valley National in privity with Olivera because Olivera did not represent Valley National's interests. See Wunschel v. City of Jersey City, 96 N.J. 651, 658, 477 A.2d 329 (1984); see also City of New Brunswick v. Speights, 157 N.J. Super. 9, 21-22, 384 A.2d 225 (Cty.Ct. 1978). Indeed, Olivera would have argued only that he was not aware of the fraud, whereas Valley National would have had an interest in proving that no fraud or forgery occurred. Consequently, it would be unfair to preclude Valley National from having its "day in court" on the fraud and forgery issue and, *185 therefore, collateral estoppel will not apply upon remand to the trial court.

II.
We are also satisfied that the trial court erred in granting summary judgment in favor of plaintiff on her claim for wrongful repossession as there existed genuine issues of material fact requiring a plenary hearing. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2; see Littman v. Gimello, 115 N.J. 154, 168, 557 A.2d 314, cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). R. 4:46-2 further provides that "[t]he court shall find the facts and state its conclusions in accordance with R. 1:7-4" in ruling on a summary judgment motion. See Slohoda v. United Parcel Serv., Inc., 193 N.J. Super. 586, 593-94, 475 A.2d 618 (App.Div. 1984). The trial court must draw all inferences against the moving party and in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 75, 110 A.2d 24; Slohoda v. United Parcel Serv., Inc., supra, 193 N.J. Super. at 594, 475 A.2d 618. Thus, to conclude that summary judgment was appropriate on the issue of wrongful repossession, the trial court had to make specific findings of fact and conclusions of law that the elements of wrongful repossession had been clearly met. This was not done.
New Jersey law permits a secured creditor to repossess collateral from a debtor in default to satisfy the outstanding obligation. N.J.S.A. 12A:9-503 specifically provides:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may *186 require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under 12A:9-504. L. 1961, c. 120, § 9-503.
This statute, which has been upheld as constitutional by the Supreme Court, see King v. South Jersey Nat'l Bank, 66 N.J. 161, 330 A.2d 1 (1974), suggests that a lawful repossession exists where (1) there has been a default on a valid security agreement and (2) the repossession is executed without a breach of the peace.
Although neither the statute nor the Uniform Commercial Code from which it is borrowed define "default", a party is generally deemed in default for failure to make payments as provided in a security agreement. See In re United Thrift Stores, Inc., 242 F. Supp. 714, 717 (D.N.J. 1965), aff'd, 363 F.2d 11 (3d Cir.1966); Barsco, Inc. v. H.W.W., Inc., 346 So.2d 134, 135-36 (Fla. Dist. Ct. App. 1977); see also 2 James J. White and Robert S. Summers Uniform Commercial Code § 27-2 at 563 (3d ed. 1988).
Furthermore, the security agreement under which the creditor exercises the right to repossession must be valid and enforceable. See Recchio v. Manufacturers and Traders Trust Co., 35 A.D.2d 769, 316 N.Y.S.2d 915, 916 (1970); 79 C.J.S. Supplement Secured Transactions § 105 (1974). N.J.S.A. 12A:1-103 provides:
Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions. L. 1961, c. 120, § 1-103.
Thus, a signature obtained through fraud or forgery may render the security agreement unenforceable.
Once it is established that the creditor has a right to repossess the collateral because the debtor is in default on a valid security agreement, the repossession must be executed in a lawful manner. A secured creditor may take possession of the collateral upon default of the debtor without judicial process as long as it is done without a breach of the peace. White & Summers, supra, *187 § 27-6 at 575; 79 C.J.S. Supplement Secured Transactions, supra, § 105(b). With respect to what constitutes a breach of the peace, it has been stated:
On the issue of an occurrence of a breach of the peace in connection with a self-help repossession it has been stated that a liberal construction of the Uniform Commercial Code cannot be permitted to defeat a public policy of discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence. "Breach of peace", as used in the Code, should be construed according to the ordinary and usual meaning of the term, and ordinarily contemplates violence or the threat of violence. However, it is not necessary that the secured party's agents commit assault in order to have committed a breach of the peace. In general, a repossession not causing any excitement, or violence, at the place of taking evokes no breach of the peace, and the right to a self-help repossession is not lost by the fact that the secured party's conduct may have been high-handed or reprehensible. [79 C.J.S. Supplement Secured Transactions, supra, § 105(b) (footnotes omitted)].
Another authority has explained:
In most cases, to determine if a breach of the peace has occurred, courts inquire mainly into: (1) whether there was entry by the creditor upon the debtor's premises; and (2) whether the debtor or one acting on his behalf consented to the entry and repossession.
In general, the creditor may not enter the debtor's home or garage without permission. The debtor's consent, freely given, legitimates any entry; conversely, the debtor's physical objection bars repossession even from a public street. This crude two-factor formula of creditor entry and debtor response must, of course, be refined by at least a consideration of third party response, the type of premises entered and possible creditor deceit in procuring consent. [White & Summers, supra, § 27-6 at 575-76].
There does not appear to be any reported decisions on this point in New Jersey, but other jurisdictions have examined whether a breach of the peace occurred in various factual circumstances. See, e.g., Laurel Coal Co. v. Walter E. Heller & Co., Inc., 539 F. Supp. 1006, 1007-08 (W.D.Pa. 1982) (secured creditor who cut chain that locked gate to debtor's business premises committed breach of peace); Reno v. General Motors Acceptance Corp., 378 So.2d 1103, 1105 (Ala. 1979) (no breach of peace where secured creditor repossessed automobile in absence of debtor at 3 a.m. with duplicate key from dealer from parking area of debtor's employer); Hill v. Federal Employees Credit Union, 193 Ga. App. 44, 386 S.E.2d 874, 878 (1989) (repossession of car at night and without borrower's knowledge did not breach peace); Benschoter *188 v. First Nat'l Bank, 218 Kan. 144, 542 P.2d 1042, 1050 (1975) (secret removal of collateral in absence of debtor not breach of peace), appeal dismissed, 425 U.S. 928, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976); C.I.T. Corp. v. Short, 273 Ky. 190, 115 S.W.2d 899, 900-901 (1938) (no breach of peace where garage doors are open and creditor enters and tows car away); Cherno v. Bank of Babylon, 54 Misc.2d 277, 282 N.Y.S.2d 114, 119-20 (N.Y. Sup. Ct. 1967) (no breach of peace despite unauthorized entry into debtor's business premises), aff'd, 29 A.D.2d 767, 288 N.Y.S.2d 862 (1968); Voltz v. General Motors Acceptance Corp., 332 Pa. 141, 2 A.2d 697, 698 (1938) (breach of peace where garage doors are closed); Jordan v. Citizens & Southern Nat'l Bank, 278 S.C. 449, 298 S.E.2d 213, 214 (1982) (repossession of auto from driveway not breach of peace); Robertson v. Union Planters Nat'l Bank, 561 S.W.2d 901, 904 (Tex.Civ.App. 1978) (no breach of peace where repossession occurred at night and debtor was not aware of it); Gulf Oil Corp. v. Smithey, 426 S.W.2d 262, 265 (Tex.Civ.App. 1968) (unauthorized entry into Gulf Oil station was breach of the peace); Ragde v. Peoples Bank, 53 Wash. App. 173, 767 P.2d 949, 951 (1989) (repossession of auto from debtor's driveway during early morning hours did not breach peace); General Elec. Credit Corp. v. Timbrook, 170 W. Va. 143, 291 S.E.2d 383, 385-86 (1982) (creditor who broke debtor's mobile home door lock to repossess mobile home breached the peace).
In light of the nature of a wrongful repossession claim, the trial court was obliged to at least make findings of fact regarding whether plaintiff was in default on a valid security agreement and whether Valley National breached the peace in repossessing the car. The trial court did not even appear to entertain these specific factual issues, let alone set forth the reasons for his findings and conclusions on the record as required by R. 1:7-4. The trial court merely stated:
Under all of the circumstances for their taking action of repossessing this vehicle when they did at that time  at that point knowing the serious implications of what had occurred even if they didn't agree with them fully to repossess that car, I'm satisfied was a wrongful repossession. I have no question that as a matter of law that's true.

*189 I'm going to grant the plaintiff's application establishing an act of wrongful possession on the part of Valley National.
Applying the settled principles discussed above, it is apparent that summary judgment was inappropriate for the adjudication of plaintiff's wrongful repossession claim. There were genuine issues of material fact that could only have been resolved by a plenary hearing. See Dean v. Universal C.I.T. Credit Corp., 114 N.J. Super. 132, 135-36, 275 A.2d 154 (App.Div. 1971); see also Roach v. Barclays American/Credit, Inc., 164 Ga. App. 616, 298 S.E.2d 304, 305 (1982); Salisbury Livestock v. Credit Union, 793 P.2d 470, 475 (Wyo. 1990). Therefore, the summary judgment in favor of plaintiff as to liability on the wrongful repossession claim is reversed and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

III.
Turning to plaintiff's cross-appeal, we are satisfied that the trial court properly denied plaintiff's motion for summary judgment with respect to her claims based on conversion and unconscionable commercial practices.

A.
Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83, 548 A.2d 1161 (App.Div. 1988); McGlynn v. Schultz, 90 N.J. Super. 505, 526, 218 A.2d 408 (Ch.Div. 1966), aff'd, 95 N.J. Super. 412, 231 A.2d 386 (App.Div.), certif. denied, 50 N.J. 409, 235 A.2d 901 (1967); 89 C.J.S. Trover and Conversion § 1 (1955); see Winkler v. Hartford Accident and Indemnity Co., 66 N.J. Super. 22, 27, 168 A.2d 418 (App.Div.), certif. denied, 34 N.J. 581, 170 A.2d 544 (1961). Although no New Jersey court has addressed the precise issue raised on this appeal, other jurisdictions *190 have held that a wrongful repossession can give rise to an action for conversion. See, e.g., Betterton v. First Interstate Bank, 800 F.2d 732, 735 (8th Cir.1986); Chesterton State Bank v. Coffey, 454 N.E.2d 1233, 1237 (Ind. Ct. App. 1983); Zimprich v. Harvestore Systems, Inc., 461 N.W.2d 425, 429 (N.D. 1990); Mitchell v. Ford Motor Credit Co., 688 P.2d 42, 44-45 (Okla. 1984); see also 69 Am.Jur.2d Secured Transactions § 591 (1973). Because there are genuine issues of material fact as to whether Valley National had a right to repossess the car, however, plaintiff's motion for summary judgment on the conversion count was properly denied. See Barco Auto Leasing Corp. v. Holt, supra, 228 N.J. Super. at 86-88, 548 A.2d 1161.

B.
Finally, we are satisfied that the trial court properly denied plaintiff's motion for summary judgment grounded on claims of unconscionable commercial practices in violation of N.J.S.A. 56:8-2. This statute provides:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser. [N.J.S.A. 56:8-2].
The language of this provision necessitates a factual finding that the defendant "inten[ded] that others rely upon" a fraud or misrepresentation to sustain liability. The record contains absolutely no evidence that Valley National was involved with the alleged fraud or that it had any reason to delay proceedings against plaintiff based on her bare assertions that a forgery occurred. Indeed, plaintiff's attorney asserted on at least one occasion that Valley National was not believed to be involved in *191 the fraud. Consequently, the trial court properly denied plaintiff's motion for summary judgment on the issue of unconscionable commercial practices.

IV.
Accordingly, the summary judgment of the Law Division in favor of plaintiff on the issue of liability for wrongful repossession and the order dismissing Valley National's counterclaims are reversed. The order denying summary judgment with respect to plaintiff's claims for conversion and unconscionable commercial practices is affirmed. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.
NOTES
[1] We are constrained to comment on the questionable trial tactics on the part of plaintiff's former attorneys in failing to issue the summons within ten days of filing the amended complaint as required by R. 4:4-1. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 345-46, 476 A.2d 250 (1984); see also Moschou v. DeRosa, 192 N.J. Super. 463, 466-67, 471 A.2d 54 (App.Div. 1984).