**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1703-20

CN JEWELLERS, LLC,
and NILESH SONI,

      Plaintiffs-Respondents,

v.

ANIL C. SONI, PNG-CNJ,
LLC, d/b/a PNG JEWLERS,
and CNJ USA, LLC,

      Defendants,

and

PNG JEWELERS, INC.,

      Defendant-Appellant.

_____

Argued December 7, 2021 – Decided February 3, 2022

Before Judges Messano and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000065-17.

Paul S. Grossman argued the cause for appellants (Weiner Law Group, LLP, attorneys; Paul S. Grossman, of counsel and on the briefs).

John van Loben Sels (Fish IP Law, LLP) of the California bar, admitted pro hac vice, and Samantha F. Green argued the cause for respondents (Sidkoff, Pincus & Green, PC, attorneys; John van Loben Sels, Samantha F. Green, and Matthew Lusich (Fish IP Law, LLP) of the California bar, admitted pro hac vice, on the brief).

PER CURIAM

Defendant PNG Jewelers, Inc. (PNG), appeals the denial of its motion to vacate default judgment against defendant in favor of plaintiffs CN Jewellers LLC (CNJ) and Nilesh Soni (Nilesh) in the amount of $486,662.56.[1] We reverse.

I.

(A)

In April 2017, plaintiffs filed a verified complaint setting forth the following factual allegations supporting their claims.

Nilesh and defendant Anil Soni were the sole members of CNJ, which was formed in 2010 and operated a jewelry store in Edison. Anil failed to make

---

[1] We use first names on occasion to avoid confusion because individuals share the same last name. We intend no disrespect by this informality.

A-1703-20

required capital contributions, resulting in revisions to their membership interests. Nilesh left for India in 2015, and, by the end of that year, Anil retained only a 17.4% interest in the LLC; Anil managed the business while Nilesh was away.

CNJ became substantially indebted to a supplier in India due to Anil's poor management.[2] Nilesh and Anil actively set about to locate investors to infuse capital and received a proposal from PNG-CA, a California corporation. Anil took over negotiations with PNG-CA but failed to communicate with Nilesh until 2017, when Anil travelled to India to meet with Nilesh. Anil convinced Nilesh to execute a consent terminating CNJ's lease in Edison.

Anil ultimately closed the transaction with PNG-CA, and transferred or converted CNJ assets, including substantial amounts of jewelry, to his own use without notifying Nilesh. Anil took the returned security deposit of $40,000 from cancellation of the lease, liquidated $60,000 of CNJ's inventory, and used that money to enter a new lease on behalf of CNJ-USA, an LLC Anil formed. CNJ-USA, in turn subleased the premises for $381,000 to a new LLC, PNG-CNJ, that Anil formed with himself and Saurabh Vidhyadhar Gadgil as

---

[2] The record included references to another action that resulted in a judgment against CNJ in favor of PVJ-India in the amount of $703,672.

members. PNG-CNJ continued to operate a jewelry store in Iselin. Plaintiffs also alleged that Haresh Soni came to New Jersey on their behalf to negotiate with Anil and resolve issues around CNJ's dissolution. The verified complaint attached an inventory of jewelry in the Edison store allegedly signed by Anil and Haresh.

Plaintiffs asserted causes of action for replevin, conversion, and fraud against Anil and PNG,[3] as well as claims against Anil pursuant to the Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-1 to -17, and other common law causes of action. Represented by attorney Lawrence B. Sachs, defendants filed a joint answer denying the allegations.

After the judge entered an order on March 2, 2018, striking defendants' answer without prejudice for failure to provide discovery, plaintiffs moved in June to strike defendants' answer with prejudice and enter default. The motion was accompanied by Nilesh's "certification of proof," in which he claimed plaintiffs were entitled to judgment against all defendants "in the amount of $481,000," computed as the sum of $381,000 — the value of CNJ's interest in defendants' leasehold and improvements — together with $100,000 Anil

---

[3] The complaint named three separate business entities as defendants: PNG Jewelers, Inc., PNG-CNJ LLC d/b/a PNG Jewelers, and CNJ-USA, LLC.

deposited on the new lease. Nilesh also calculated Anil misappropriated an additional $174,786.70 from CNJ, and plaintiffs sought judgment for $655,786.70 against Anil.

The motion sparked a response from Sachs, who then served answers to interrogatories and responses to the document request, and cross-moved to restore defendants' pleading. Plaintiffs' counsel, however, outlined continued discovery deficiencies and urged the court to deny defendants' cross motion, suppress their answer pursuant to Rule 4:23-5(a)(2), and enter default judgment pursuant to Rule 4:43-2(b). The judge entered an order on August 6, 2018, that denied both plaintiffs' motion and defendants' cross-motion without prejudice. The order provided dates, all of which had already passed, by which defendants were to cure deficiencies in discovery responses.

Defendants moved to reinstate their answer in September, with Sachs certifying that fully responsive discovery was supplied. Plaintiffs opposed the motion. Their counsel certified that responses from the three defendant entities were identical to the responses served by Anil and were all certified by Anil. Sachs answered, claiming Anil was "the entity or individual responsible for responding . . . based upon his relationship and interest in all of the [d]efendant[] entities." The judge entered an order in January 2019 vacating

5

his prior order suppressing defendants' pleading and restoring the matter to the trial list.

By March, plaintiffs again sought to strike defendants' answer and enter default because they were denied opportunities to depose Anil, Gadgil and a principal of PNG. Sachs responded, noting that "one of the [d]efendants resid[ed] in California," and he needed sufficient time to schedule the depositions. Sachs also noted that striking defendants' answer was inappropriate "since no [c]ourt [o]rder mandating the deposition has ever been entered." The judge entered such an order on June 7, 2019, that specifically said defendants' pleadings would be stricken for failure to comply. Anil was deposed on July 11.

When Sachs produced neither Gadgil nor a principal of PNG for deposition, plaintiffs again moved to strike the answer and enter default judgment against PNG for $481,000, plus $5,662.56 in counsel fees. The judge entered an order on October 8, 2019, striking PNG's answer and defenses "pursuant to R. 4:23-5(a)(1) and the . . . the June 7, 2019 [o]rder,"[4] and entering

---

[4] Rule 4:23-5(a)(1) dismissals without prejudice, and Rule 4:23-5(a)(2) dismissals with prejudice, expressly apply to non-compliance with discovery obligations pursuant to Rule 4:17, pertaining to interrogatories, Rule 4:18, pertaining to demands for documents, and Rule 4:19, pertaining to demands for

judgment in that amount in plaintiffs' favor. Plaintiffs' counsel served a copy of the judgment on Sachs the following day.

On January 27, 2020, however, the judge entered an order "dismiss[ing the matter] without prejudice in favor of transfer to arbitration pursuant to the [o]perating [a]greement . . . executed between the parties, the [p]laintiff[]s having consented to the transfer." The order was brought on Sachs' application, and the court conducted oral argument, although we have not been provided with any transcript of the proceeding. PNG was included in the order referring the matter to arbitration.

(B)

The above was necessary prelude to the matter before us. In December 2020, represented by its current counsel, PNG moved to vacate the October 2019 default judgment pursuant to Rule 4:50-1(f). Counsel certified that he reviewed Sachs' file and there was no entry of default or notice of a proof hearing prior to entry of the judgment, as required by Rule 4:43-2, and even if

_____

medical examinations. Neither subsection applied here. An order striking a party's answer and entering judgment by default for failure to comply with an order to appear at deposition would be entered pursuant to Rule 4:23-2(b)(3).

A-1703-20

Sachs' "file was incomplete," and the court issued the notices, "there [wa]s no evidence within Sachs' file indicating . . . PNG received notice of either."

The motion was supported by a certification of Rajendra Soni, a member of PNG's Board of Directors and its CEO from 2014 to February 2019. He detailed some of the negotiations between Anil and PNG but said Anil was "never . . . an employee or authorized agent of PNG." Rajendra said that Sachs emailed the company with plaintiffs' counsel's notification, in care of its California address, of a hearing in May 2017 on the order to show cause, along with a copy of the court's letter requiring personal attendance of the parties.[5]

Rajendra further certified that he was surprised when a copy of the lawsuit was served on him, because "PNG was never involved in any manner with respect to any negotiations or disagreements between Anil and Nilesh, or any CN[J] operations." He called Anil, who was also surprised, and on Anil's recommendation, PNG retained Sachs.

Rajendra attended the May 2017 hearing on the order to show cause with Sachs, who advised him afterwards "PNG's role in the matter was now complete." Rajendra certified: "[t]hereafter, no one contacted me, or spoke to me, or gave me any documents relating to PNG and this lawsuit." PNG-CNJ

---

[5] Gadgil is also named in plaintiffs' counsel's letter at the California address.

A-1703-20

conducted a jewelry business in Iselin, but it wound up operations in December 2018. PNG heard nothing further regarding the suit until the company was served in California with a federal district court complaint in 2020 seeking to enforce the New Jersey default judgment obtained by plaintiffs.

Anil also supplied an affidavit stating PNG was not involved in his disputes with Nilesh and CNJ. Anil said in 2019, when Sachs asked about potential deponents for PNG, Anil thought he meant PNG-CNJ, and Anil said he could be deposed as its agent. He never thought PNG was involved in the litigation, and never told Rajendra it was still involved after the May 2017 appearance on the order to show cause.

The motion was also supported by a certification from Sachs. He consented to accept service on all defendants, and, although he could not recall telling Rajendra PNG was no longer involved in the litigation, he did state that after the May 2017 hearing, his "communication with defendants was done through Anil, whom [he] believed (perhaps wrongly) was authorized to speak for all of the defendants." Sachs admitted that if Anil was not communicating with PNG about the litigation, it "could have believed that it was no longer involved."

A-1703-20

Sachs could not recall ever contacting "any representative of PNG" about the deposition notices or the court's June 2019 order compelling depositions by a date certain; he "may have spoken to Anil, but there [was] no record of [him] doing so in [his] file." Sachs said when the depositions were rescheduled, he sent notice to Anil, through Anil's brother. He never sent a copy to PNG.

Sachs also certified that Anil told him PNG was no longer doing any business in the United States, and Sachs made no effort to contact the company in California. Sachs filed opposition to plaintiffs' motion for default judgment, advising the judge that he wished to be relieved of representing PNG "because [he] could not communicate with [it]." But Sachs admitted he never tried to contact PNG at its California address or conduct an internet search. After the judge entered default judgment, Sachs never sent PNG a copy because he "believed [it was] no longer doing business in the United States."

Lastly, Ashutosh Joshi, PNG's CEO after February 2019, certified that the company was a wholly owned subsidiary of an Indian company and maintained corporate headquarters and a retail store in California. That information was on its website. Joshi reiterated Sachs never contacted anyone at the company regarding depositions, and no one knew the court ordered

depositions or entered default judgment. Joshi again said that PNG was not involved in the dispute between Nilesh and Anil over CNJ.

Plaintiffs' opposition relied primarily on the procedural history set forth in I(A) above. Additionally, Nilesh certified that plaintiffs had since decided to abandon arbitration and dismissed their claims against Anil, relying, in part, on the judgment against PNG. He asserted plaintiffs would suffer prejudice if the judgment was vacated.

A different judge considered PNG's motion to vacate and rendered an oral opinion denying the motion after hearing argument. The judge concluded PNG was in the best position to gather information from Sachs, who it retained as its counsel, yet it failed to keep in contact with Sachs or confirm it was no longer involved in the litigation. Because fourteen months had passed since entry of judgment, PNG needed to demonstrate exceptional circumstances to vacate the judgment under Rule 4:50-1(f). The judge noted attorney fault "generally doesn't meet the standard for either excusable neglect or . . . exceptional circumstances." She also found Sachs' current certification was "at odds with prior representations made during the pendency of the litigation," and contradicted Rajendra's certification.

A-1703-20

The judge stayed execution on the judgment after the parties reached agreement on staying the federal suit in California.  This appeal followed.

## II.

Rule 4:50-1 provides grounds by which the court may relieve a party "from a final judgment or order."  "The rule is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'"  US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Mancini v. EDS , 132 N.J. 330, 334 (1993)).  "A court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'"  Mancini, 132 N.J. at 334 (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)).  "The trial court's determination under the rule warrants substantial deference[] and should not be reversed unless it results in a clear abuse of discretion."  Guillaume, 209 N.J. at 467 (citing DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009); Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

The court may provide relief from final judgment for "any . . . reason justifying relief from the operation of the judgment or order."  R. 4:50-1(f).  "No

categorization can be made of the situations which would warrant redress under subsection (f). . . . [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." DEG, 198 N.J. at 269–70 (alteration in original) (quoting Ct. Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). The use of subsection (f) is "limited to 'situations in which, were it not applied, a grave injustice would occur.'" Guillaume, 209 N.J. at 484 (quoting Little, 135 N.J. at 289). Deciding whether to grant relief under subsection "(f) calls for the exercise of sound discretion, 'guided by equitable principles, and in conformity with the prescription that "any doubt should be resolved in favor of the application to set aside the judgment to the end of securing a trial upon the merits."'" Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100–01 (App. Div. 1998) (quoting Goldfarb v. Roeger, 54 N.J. Super. 85, 92 (App. Div. 1959)).

The motion judge concluded Sachs' certification contradicted Rajendra's claim that Sachs told him PNG was no longer involved in the litigation after the May 2017 hearing on the order to show cause. However, Sachs only said he did not recall that conversation. Far more important were Sachs' admissions, uncontradicted on this record, that he never contacted PNG directly after the order to show cause, never notified it directly about the need to sit for

13

depositions, and never notified PNG of the default application. Instead, Sachs only contacted Anil, relying on Anil's self-professed claim that he had authority to speak on behalf of all defendants.

The judge found Sachs' certification contradicted prior representations the attorney made during the litigation. However, Sachs' representations that Anil had authority to speak for all defendants were premised on Anil's misrepresentations, not on Sachs' own investigation of PNG's independent status as a California corporation or the interrelationships, if any, between his clients. Indeed, the motion judge failed to recognize the tenuous ethical position Sachs was in, since it is apparent from reading the complaint that Anil's interests and those of PNG were potentially adverse.

We have repeatedly considered whether an attorney's negligence provides grounds for relief under subsection (f). In Parker v. Marcus, the plaintiff's complaint was dismissed when he failed to appear for arbitration; his attorney never notified him to appear, and thereafter lied about the ongoing progress of the litigation. 281 N.J. Super. 589, 591–92 (App. Div. 1995). We said that in considering relief under subsection (f), a court must consider: "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to

14

the other party." Id. at 593 (citing Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195 (App. Div. 1985)). We rejected the defendant's argument that reinstatement of the complaint was unduly prejudicial, reversed the dismissal and remanded the case for further proceedings. Id. at 595.

In Jansson, as in this case, the court dismissed a pleading — the plaintiffs' complaint — for a discovery dereliction. 198 N.J. Super. at 193. Three years later, a different attorney moved to reinstate the complaint, and, applying the factors cited above, we granted that relief, finding the plaintiffs "were, themselves, entirely blameless." Id. at 195; see also Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 98–99 (App. Div. 2014) (citing Jansson factors and holding they were applicable in considering whether a pro se litigant's negligent representation of his interests justified relief from judgment).

We find another reason to grant PNG relief which the judge failed to address. "Our Rules prescribe a two-step default process, and there is a significant difference between the burdens imposed at each stage. When nothing more than an entry of default pursuant to Rule 4:43-1 has occurred, relief from that default may be granted on a showing of good cause." Guillaume, 209 N.J. at 466–67 (citing R. 4:43-3). Final judgment by default may be entered only after default has been entered, "but not simultaneously therewith." R. 4:43-2.

Here, plaintiffs' single motion sought the striking of PNG's answer for failing to sit for depositions, entry of default, and entry of default judgment, which was clearly improper.

In certain limited circumstances, judgment by default may be entered by the clerk. R. 4:43-2(a). Otherwise, the party seeking judgment must move before the court, upon notice to all parties, to enter default judgment, and the court may conduct a proof hearing; the defaulting party or its representative is entitled to notice of the proof hearing. R. 4:43-2(b). Based on the record before us, it is apparent that plaintiffs never complied with these procedures to secure default judgment.[6]

Moreover, even if the default judgment were properly entered under Rule 4:23-2(b)(3), a successful plaintiff may be required to furnish some proof on the merits to show entitlement to the relief demanded based on the cause of actin pled in the complaint, and to prove the quantum of damages. See, e.g., Slowinski v. Valley Nat'l Bank, 264 N.J. Super. 172, 183 (App. Div. 1993).

---

[6] We reject the assertion plaintiffs made at argument that this issue was never raised by PNG. Although not asserted during oral argument before the motion judge or repeated in its brief on appeal, the procedural infirmities in this case were specifically noted in PNG's counsel's certification in support of the motion to vacate default judgment.

16

Judgment in plaintiffs' favor on its claims against PNG for fraud and conversion were not established by the documents in the record before us and should not have been entered without a proof hearing.[7]

In Nowosleska v. Steele, we reversed the denial of a motion to vacate default judgment entered against the defendants in an ejectment action. 400 N.J. Super. 297, 300, 306 (App. Div. 2008). We noted:

> A court's liberality in vacating default judgments is justified, since a default judgment is based on only one side's presentation of the evidence without due consideration to any countervailing evidence or point of view, and, thus, may not be a fair resolution of the dispute. As a result, on a motion to vacate a default judgment, "[a]ll doubts . . . should be resolved in favor of the parties seeking relief."
>
> [Id. at 303 (alteration in original) (quoting Mancini, 132 N.J. at 334).]

In this case, the motion judge failed to resolve any doubts in favor of PNG; she did the opposite. In so doing she mistakenly exercised her discretion and denied the motion to vacate the default judgment entered against PNG. We

---

[7] The replevin claim was apparently resolved because early in the litigation, the court ordered whatever jewelry was in the safe at CNJ and under Anil's control to be retained and not disposed of by the parties. It is unclear what happened to that jewelry.

A-1703-20

reverse and vacate the judgment, reinstate PNG's answer, and remand the matter to the trial court for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION