**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2391-23

TRACY MORRIS,

    Plaintiff-Respondent,

v.

ALAN CONWAY,

    Defendant-Appellant.

_____

Submitted February 13, 2025 – Decided February 20, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0870-10.

Alan Conway, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matter, defendant Alan Conway appeals from a February 20, 2024 order, which granted plaintiff Tracy Morris's motion to set

defendant's alimony and child support obligations and arrears. Defendant also challenges the portion of the February order, which denied his cross-motion to: dismiss plaintiff's motion on procedural grounds; impute capital gains income to plaintiff from the sale of a home she received in equitable distribution; recuse the motion judge; compel plaintiff to provide documentation regarding any state aid she received; refund alimony; address plaintiff's alleged fraudulent receipt of supplemental social security (SSI); and grant his proposed parenting time schedule. We affirm.

The parties divorced in 2011 following a nearly thirteen-year marriage. They entered a comprehensive Divorce Settlement Agreement (DSA), which they negotiated with the help of counsel and was incorporated into their dual final judgment of divorce.

Three children were born of the marriage—all of whom are now adults. The eldest and youngest children are living with a disability and receive SSI payments. The DSA incorporated a custody and parenting time agreement, which is not a part of the appellate record. However, we glean from the record that plaintiff was designated the parent of primary residence and defendant was afforded parenting time every week during the weekends. The DSA

contemplated the children living with a disability might not become emancipated.

The DSA established formulas for the calculation of child support and alimony and described how the parties' incomes would be calculated. Initially, defendant's income for alimony purposes was calculated using a weighted average of his base and bonus pay for the five years preceding the divorce and plaintiff was imputed an annual income of $30,000. The alimony was one-third of the difference between the parties' incomes. Child support would be payable pursuant to the Child Support Guidelines.

The DSA then provided as follows:

> Commencing in 2016, no part of [defendant's] bonus will be utilized for alimony purposes because no part of the bonus would have been earned during the marriage . . . . Furthermore[,] alimony will be computed using [defendant's] regular pay up to a maximum of $300,000[] excluding bonus, less [plaintiff's] imputed income or her actual income if it is higher. The amount of alimony will be one-third of the difference between [defendant's] income as computed per the above formula and [plaintiff's] income as computed per the above formula. The parties will use the . . . [g]uidelines in determining the child support figure. Child support under these circumstances will be based on [defendant's] regular pay plus his actual bonus plus his "other" pay[1] if any. [Defendant] agrees that

---

[1] "Other pay" or "other income" as the DSA also referred to it, was "defined as all other income that is not part of 'regular pay' or 'bonus pay.'"

his regular pay will be calculated at not less than $165,000[]. The parties shall provide to each other their year[-]end paystubs on or before February 15th and proof of gross income, i.e. W-2[]s and 1099[]s, bonus and/or income from any source, including but not limited to bonuses, rental income, and distributed deferred compensation not equitably distributed herein to the parties in the within [a]greement and deferred in that tax year on or before February 15th of each year beginning February 15, 2012. Child support shall then be retroactively adjusted to January 1st of the year in which the adjustment is to be made, i.e. in 2012 the adjustment is retroactive to January 1, 2012.

The DSA further stated:

Child support shall be revisited at such time as each child is attending college/vocational school, or if necessary, an institution/residential institution, or receiving Federal, State or other aid, or in the case of [the oldest and youngest children], they have reached the age of [eighteen] or no longer or not attending high school, whichever occurs first, and in the case of attending college/vocational school or institution and the child is living away from home while attending college/vocational school or institution.

Child support was also subject to review based on a change in circumstances and as further defined in section IV, the alimony provision of the DSA.

Section IV of the agreement memorialized the fact defendant agreed to pay plaintiff what was then known as permanent alimony commencing 2011. The alimony for 2011 was subject to its own formula as was the alimony payable

from 2012 through 2015, which included defendant's base pay and bonuses. However,

> [c]ommencing in tax year 2016 and thereafter, alimony will be calculated by utilizing [defendant's] regular pay, maximum being $300,000[] and minimum being $165,000[], excluding any bonus earned by [defendant] or other income, minus [plaintiff's] imputed income of $30,000[] or actual income if higher. That amount shall be divided by three and shall be determined to be [plaintiff's] alimony.

Commencing February 15, 2012, and each February thereafter, the DSA required defendant to provide plaintiff

> his year[-]end paystub[] and proof of gross income, i.e. W-2[]s and 1099[]s, bonus and/or income from any source, including but not limited to bonuses, rental income (except in 2010), distributed deferred compensation and/or KEPER funds (deferred in that tax year), [and] commissions . . . . Alimony shall then be calculated as per [the DSA's provisions] and retroactively adjusted to January 1st of the year in which the adjustment is to be made, except 2011[,] in which the support shall take effect July 1, 2011.

The DSA reflected that the parties resided in the marital home in Chester and had a rental property in Cedar Grove. Defendant kept the marital home, and plaintiff retained the Cedar Grove residence subject to equitable distribution offsets.

The DSA contained a provision requiring the parties to attend mediation with the mediator who had helped resolve their divorce in the event they could not agree upon child support as the sum was recalculated from year-to-year. There was a similar mediation provision governing the resolution of alimony disputes.

The parties' litigation continued post-judgment. We recite the post-judgment orders relevant to the arguments raised on this appeal.

On February 6, 2019, a motion judge entered an order, which recounted that defendant moved to modify alimony and child support retroactively based on an employability expert's analysis, which showed plaintiff could earn more than the $30,000 imputed to her. Defendant also moved to terminate child support for one of the children receiving SSI.

Plaintiff testified she was working full time as a personal trainer and adduced evidence showing her annual earnings for 2015 through 2017 were approximately $50,000. The judge imputed this sum to her rather than the higher income sought by defendant, noting defendant's expert did not consider plaintiff's role as primary caretaker of the children living with a disability and that "[i]t is probable that [p]laintiff is unable to just 'go get another job' as suggested by [d]efendant." The appellate record does not contain a complete

copy of the February 2019 order to enable us to understand the ruling on the request to terminate child support for the child receiving SSI, but the executory portions of the order note that request was denied.

At some point in 2020, plaintiff moved to increase alimony and child support and compel defendant to pay arrears, which by then totaled more than $24,000. Defendant filed a cross-motion to recuse the motion judge[2] and sought other unrelated relief.

The motion judge recounted that his 2019 order required the parties to attend mediation pursuant to the DSA to resolve the alimony and child support for 2019 and 2020. However, for various reasons, the parties did not attend mediation. Defendant again sought to impute a higher income than plaintiff was earning, pointing to his expert's report from 2018. The judge imputed $60,000 and $62,500 to plaintiff for 2018 and 2019 based on her earnings and caregiving responsibilities for the children. The judge then established the alimony and child support figures pursuant to the formulas in the DSA.

Defendant sought recusal of the motion judge because, in a prior order, the judge ordered defendant to communicate with plaintiff by non-harassing email to schedule mediation "even though in 2017 plaintiff threatened to get a

---

[2] This was the same judge who entered the 2019 order.

restraining order against defendant if he emailed her." The judge denied the recusal request, noting there was no restraining order between the parties, nor an agreement or order restricting them from communicating by email. The judge had directed them to communicate through email in a non-harassing manner, and plaintiff had retracted her threat to seek a restraining order.

On April 10, 2023, plaintiff filed a post-judgment enforcement motion alleging defendant failed to pay her alimony and child support. She certified he stopped paying based "on the theory that he was no longer obligated to support [p]laintiff and their children since . . . in 2022, [p]laintiff had realized a profit from the sale of" the Cedar Grove home. Plaintiff also claimed there was a change in her financial circumstances because the pandemic caused her to lose business. In July 2022, she sold the Cedar Grove home and moved with the children to Tabernacle, "an area . . . with lower living expenses and a local [d]ay [p]rogram that allowed the disabled adult children to cut their commute from [one] hour each way to [five] minutes." She notified defendant about the impending sale and the move by certified letter five weeks beforehand.

The relocation required plaintiff to "build up a new client base[,] which takes an extended period of time" because she worked on commission. She certified she was now "paid about $25 an hour versus the $40 to $60 in northern

New Jersey," and "[a]s a result[,] her income has dramatically reduced." In addition, "[s]he . . . has the added burden of raising [two] disabled adult children single handedly, who require constant supervision and life[-]long care. Defendant ha[d] unilaterally terminated overnights[,] and [p]laintiff [was] now the sole custodial parent."

Defendant opposed plaintiff's motion. He certified he should not have to pay alimony because plaintiff had $250,000 in capital gains in 2022, which she failed to disclose on her Case Information Statement from the sale of the Cedar Grove residence. Defendant argued the capital gains should be included as income to plaintiff for purposes of the alimony and child support calculations. He claimed plaintiff defrauded the Social Security Administration because she failed to report the child support she received. Defendant also requested the judge grant him parenting time every other week from Friday at 7:00 p.m. to Sunday at 7:30 p.m. due to plaintiff's unilateral relocation with the children.

Judge Patricia J. O'Dowd heard oral argument and considered testimony on the parties' motions on June 19, 2023. Plaintiff confirmed defendant ceased paying alimony but was still paying her child support. She testified she did not realize any income from the capital gains and urged the judge to impute an income of $30,000 per year to her.

9

Plaintiff explained the reasons for her move. She noted that when she lived in Cedar Grove the children living with a disability "were traveling at least one hour each way to their programs." The daughter was "once . . . on a bus for three hours, and another time, she was on there for six hours. It's problematic because she actually sometimes didn't want to go because of the bus situation." The children's day program in Tabernacle was five minutes away from plaintiff's home, and "[t]hey enjoy their program, and they're excited to go." Plaintiff's home had a room for "each child . . . and there's enough space for everybody to have what they need." The home has a big backyard and a park nearby. Plaintiff's neighborhood is quiet, and "[t]he road is not busy, so [plaintiff was] not concerned about [the children] and the road." She noted defendant stopped seeing the children in June 2022.

Defendant claimed plaintiff reported $380,000 in capital gains on her tax return and $159,000 in expenses, leaving an income of $223,000, which he argued should be imputed to her. He alleged plaintiff violated the DSA by withholding the 1099 showing capital gains income. Defendant pointed the judge to the expert report from 2018 and the prior motion judge's orders, which imputed greater income to plaintiff. He urged the judge to modify parenting time because he could not leave work in New York City and travel to Tabernacle

10

and then back to Chester for parenting time. He proposed parenting time occur every other week and plaintiff do all the driving.

On June 22, 2023, the judge entered an order directing the parties to mediate alimony and child support as required in the DSA. The support ordered would be retroactive to the filing date of plaintiff's motion. She granted plaintiff's request to reestablish a probation account and compel defendant to pay alimony and child support through probation. The judge denied defendant's request to impute plaintiff's 2019 income to her for purposes of calculating support for 2020 through 2023. She denied defendant's request to utilize the net capital gains as income for plaintiff to calculate alimony and child support. The judge also denied his request to compel plaintiff to produce the alleged evidence of her fraud on social security and revisit child support based on the alleged fraud. She ordered the parties to attend mediation to resolve the parenting time dispute.

Judge O'Dowd's order appended a written statement of reasons. She made the following findings:

> Plaintiff's 2022 tax return reports an adjusted gross income of $52,341 and taxable income of $32,941, which this [c]ourt would consider plaintiff's "gross income" and/or "actual compensation" as [c]ourts have in prior [o]rders. Therefore, there is no evidence of any fraud.

11

Defendant's request that plaintiff's income include her capital gains from the sale of the Cedar [G]rove property is denied. On an alimony modification application, all previously equitably distributed assets and all assets acquired with[,] by[,] or through equitably distributed assets, when repaid, are not to be deemed to be income for the purpose of determining alimony. Flach v. Flach, 256 N.J. Super. 333 (App. Div. 1992); see also Innes v. Innes, 117 N.J. 496 (1990). The Cedar Grove property was awarded to plaintiff as part of equitable distribution, and therefore [it] would be improper double dipping to include it as part of income.

In conclusion, the parties are to attend mediation to finalize the exact figure to be utilized as plaintiff's 2022 income, whether this be $52,341 to $32,941. However, this [c]ourt declines to enforce the use of "net capital gains in the amount of $223,000" to plaintiff's income for purposes of calculating defendant's 2022 support obligation, finding no clear support for this in the parties' [DSA] or financial documentation.

The economic and parenting time mediations were unsuccessful. On August 4, 2023, defendant appealed from the June 22, 2023 order, but the appeal was dismissed as interlocutory.

On September 9, 2023, plaintiff moved to enforce alimony and arrears. She also sought to modify child support to reflect no overnights and asked for sole custody of the children because defendant had not seen them since June 2022.

12

Defendant opposed the motion and filed a cross-motion. He alleged plaintiff did not properly serve him with her motion. Substantively, he argued there was no "need for [a]limony or [c]hild support to be resumed," because his payments "were adjusted to reflect plaintiff's confirmed receipt of at least $250,000 in capital gains." Defendant maintained "plaintiff has fraudulently not supplied the 1099 from real estate as required by the [DSA]." He sought an alimony refund.

The cross-motion sought plaintiff be compelled to provide documentation regarding any state aid she received and for the court to address her fraudulent collection of SSI. Defendant requested the court enter a custody order in line with the relief he requested in the prior motion proceedings. He also sought the judge's recusal.

On December 1, 2023, Judge O'Dowd heard oral argument and took testimony from the parties. Plaintiff reaffirmed that she had not received alimony from defendant since March 1, 2023, but continued with child support. The parties never returned to mediation to address support for 2021 and 2022. Instead, defendant used plaintiff's 2020 income to calculate support for the following two years. Plaintiff noted her income for 2020 through 2022 was

13

$62,500; $52,000; and $53,000, respectively. She projected her 2023 income would be approximately $39,000.

Plaintiff testified defendant made no effort to see the children. She made several suggestions, including driving the children to Princeton so he could see them because "unfortunately, the children are not very enthusiastic about going to see him now. So there's been a big . . . loss of time and . . . relationship. [Plaintiff suggested] to start very slowly with just a meeting at this stage before overnights could be resumed."

Defendant confirmed he ceased paying alimony as of March 2023. He explained this was "based on [plaintiff] not providing income from her part. She withheld 1099s from real estate[] and continues to do so." The judge explained she already ruled on this issue in the last motion and asked why defendant continued to not pay his alimony. He responded that he did not consider the order binding because it was not final, as his appeal had been dismissed as interlocutory. The judge noted defendant never moved to reconsider her order.

Defendant argued the judge should dismiss plaintiff's motion because he did not receive all her exhibits. The judge pointed out defendant's motion was also deficient because it did not append a proposed form of order as required by the Rules of Court. Regardless, there was no indication defendant did not have

the documents the court possessed, and the judge was going to decide the motions notwithstanding the deficiencies in each party's papers.

Defendant reiterated "the 1099 is required by [the DSA] to be provided; it has not been provided. I asked for that multiple times in March of 2023; it still has not been provided. . . . So to me, the [DSA] should be followed. It has not been followed." He cited the DSA provision, which requires the parties to consider "[t]he gross income, W-2s, and 1099, bonus and income from any source." He claimed it was the parties' mutual intent to include the 1099 income and plaintiff violated the DSA by providing her tax return showing the 1099 income, but not the 1099 itself. Defendant argued the judge misinterpreted the law because Flach did not "reference capital gains," and our case law requires that income from all sources be considered for support purposes, especially as regards the supported spouse's ability to support herself. He also asserted the judge was treating him unfairly and ruling the opposite of the prior motion judge.

The judge directed plaintiff on the record to provide defendant a copy of the 1099. However, she again denied defendant's request to include the 1099 income for the reasons she expressed in her June 2023 order. She noted the Cedar Grove home was not an income-producing asset because

> [i]n this case, the income that we're discussing
> came from the sale of the primary residence for . . .

plaintiff where she resides with the children. She has utilized those funds to purchase another home. She has previously certified that the vast majority, if not all, . . . of the capital gains were exempt under the statute.

Regarding parenting time, defendant argued it was impractical for him to drive a long distance to pick up the children.[3] He claimed his car had over 200,000 miles on it and he would be putting the children at risk driving long distances in it. Defendant proposed parenting time occur every other week and plaintiff drop the children off at his home in Chester Thursday evenings and pick them up from his home Saturday nights.

As regarded the SSI payments, defendant claimed the judge was not adhering to the parties' mutual intent as expressed in the DSA to revisit child support when state aid is received. He claimed the court was "supporting SSI fraud." The judge pointed out "[t]he child support guidelines say that [s]ocial [s]ecurity benefits paid directly to the children are excluded from the child support analysis." She observed "[t]here's a difference between child support and these disability payments. They're not the same thing."

---

[3] The parenting time discussion involved the eldest and youngest child because the judge pointed out the middle child had emancipated.

Before oral argument concluded, defendant reiterated he "want[ed] a different judge." In addition to not following the DSA, defendant accused the judge of having "external conversations with someone."

Judge O'Dowd issued the February 20, 2024 order accompanied by a detailed statement of reasons. She granted plaintiff's motion and set defendant's child support and alimony obligations for the years 2021 to 2023, pursuant to the formula in the DSA. The judge found plaintiff's income for the years in question was: $55,302.74, $56,537.28, $39,000, respectively, and denied defendant's request to include the 1099 income. Based on her calculations, the judge also established defendant's alimony and child support arrears and denied defendant's request for a refund.

The judge denied defendant's request to dismiss plaintiff's motion on procedural grounds. She denied his request that plaintiff produce documentation of the state aid and that the court address the alleged SSI fraud. The judge also denied the recusal motion.

The judge denied plaintiff's request for sole custody and denied defendant's proposed parenting time. She ordered parenting time occur every other week from Friday at 7:00 p.m. until Sunday at 7:30 p.m. and directed the parties "to choose a location approximately forty . . . miles from plaintiff's home

17

and approximately forty . . . miles from defendant's place of work" to exchange the children.

The judge's statement of reasons recounted the fact she had already adjudicated and denied the request to include the capital gains as income for support purposes and defendant had not filed a motion for reconsideration. She then detailed the mathematical calculations she used to arrive at the alimony, child support, and arrears figures, which we need not repeat here.

As regarded the parenting time, the judge observed plaintiff's home and defendant's place of work were approximately eighty miles apart. She reasoned it was fair to have them meet halfway and made the following findings:

> When deciding whether to modify a parenting time schedule, the [c]ourt must . . . consider the best interests of the child. See [Kinsella v. Kinsella, 150 N.J. 276 (1997)]. Under these standards, the parent seeking the change must establish: 1) the present schedule for custody and parenting time under the current order; 2) the circumstances that changed after that order was entered; and 3) the adverse effect of the new circumstances and current parenting arrangement in a child's best interest. See [Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958)]. The [c]ourt believes that it would be in the children's best interest to see defendant as much as possible. The [c]ourt recognizes that defendant must have a way to safely transport the children. However, the [c]ourt also does not believe that it is fair to require plaintiff to do all of the driving.

The judge rejected defendant's SSI-related arguments for the same reasons as the arguments related to the 1099 income, namely, defendant had raised the argument in a prior motion and the court had rejected it in its May 28, 2020 order. She quoted the prior motion judge's findings that although defendant was correct the DSA said child support would be revisited because the children living with a disability were adults and receiving SSI, "the parties also agreed that child support would be calculated according to the guidelines, and under the guidelines, SSI benefits paid directly to the children are excluded from the analysis. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A (10)(c)(1) to R. 5:6A, at www.gannlaw.com (2020)." Defendant's request was denied for these reasons and because he made the same request without filing a "proper motion for reconsideration on this issue."

The judge denied the recusal motion because defendant had not met his burden to prove any of the grounds for recusal he had asserted.[4]  There was no evidence the judge had ruled opposite of previous judges.  "Instead, the [c]ourt has ruled identical to other judges on the issues of SSI fraud and plaintiff's

---

[4]  Although the judge's written findings did not address defendant's claim that she had ex parte communications about the case, at oral argument the judge made the following oral findings:  "I'm not going to transfer this case to a colleague at this time.  . . . I have no relationship with [plaintiff] of any kind. And as I've indicated, I haven't spoken to anyone about your case offline."

underemployment, as seen in the [c]ourt's June 28, 2020 [o]rder. The [c]ourt has also ruled on all of defendant's prior motions using valid case law and [c]ourt rules."

The judge rejected defendant's procedural objections reasoning "[t]he [c]ourt [r]ules do not permit a [c]ourt to dismiss a motion based on a failure to attach exhibits." She noted Rule 1:5-3 permits dismissal for lack of service. However, she reasoned: "Looking at the parties' papers, the [c]ourt does not find that plaintiff failed to provide service, as the motion that the [c]ourt received includes a valid certification."

I.

On appeal, defendant raises the same arguments he asserted in his motions. He challenges: the income the judge used for plaintiff and her disregard of plaintiff's alleged underemployment in the calculation of support; her refusal to include the alleged 1099 income in the support calculations; the parenting time determination; the judge's refusal to address the alleged SSI fraud; and her refusal to recuse.

As a general proposition, "[w]e accord deference to a trial court's factfindings, particularly in family court matters where the court brings to bear its special expertise." Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare

v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Ibid. "However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

Family Part judges have broad discretion to decide alimony and child support disputes. Martindell v. Martindell, 21 N.J. 341, 355 (1956); Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). Income imputation decisions are also discretionary. Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). Recusal is also a decision, which rests within the sound discretion of the trial judge. Jadlowski v. Owens-Corning Fiberglas Corp., 283 N.J. Super. 199, 221 (App. Div. 1995). As regards parenting time "the question is always what is in the best interests of the children." Hallberg v. Hallberg, 113 N.J. Super. 205, 209 (App. Div. 1971).

Having reviewed the record pursuant to these principles, we conclude the arguments defendant has raised on appeal uniformly lack merit. We affirm substantially for the reasons expressed in Judge O'Dowd well-reasoned decision and add the following comments.

Res judicata bars re-litigation of claims or issues already litigated. Velasquez v. Franz, 123 N.J. 498, 505 (1991). "In essence, the doctrine . . . provides that a cause of action between parties that has been finally determined on the merits by a [court] having jurisdiction cannot be re[-]litigated by those parties or their privies in a new proceeding." Ibid. (citing Roberts v. Goldner, 79 N.J. 82, 85 (1979)). "For a judicial decision to be accorded res judicata effect, it must be a valid and final adjudication on the merits of the claim." Id. at 506 (citation omitted).

The SSI issue was litigated with finality when the prior motion judge entered the May 28, 2020 order. Defendant's disagreement with the final result was not license to continue to raise the issue years later on successive motions. This issue was barred as res judicata.

"Under the law-of-the-case doctrine, 'where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit.'" Bahrle v. Exxon Corp., 279 N.J. Super. 5, 21 (App. Div. 1995) (quoting Slowinski v. Valley Nat'l Bank, 264 N.J. Super. 172, 179 (App. Div. 1993), aff'd, 145 N.J. 144 (1996)). Although the doctrine is non-binding, it is intended "to prevent

relitigation of a previously resolved issue." In re Est. of Stockdale, 196 N.J. 275, 311 (2008).

The judge was not beholden to repeatedly entertain defendant's arguments regarding the alleged 1099 income where she had previously adjudicated the issue in her June 22, 2023 order. Defendant never moved to reconsider this order. The judge's findings were sound as a matter of fact and law, and were the law of the case. Although the ruling on the 1099 issue was interlocutory because the judge had ordered the parties to mediation, there was no basis for the judge to reach a different result when defendant filed another motion seeking the same relief for the same reasons. Nor are there grounds for reversal on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-2391-23